**Patrick MARSHALL, Appellant**

v.

**The STATE of Texas**

NOS. PD–0509–14 & PD–0510–14

Court of Criminal Appeals of Texas.

Delivered: January 13, 2016

Patrick Marshall, Jon Evans, for Appellant.

Angie D. Roberts–Huckaby, Brian Erskine, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which JOHNSON, HERVEY, ALCALA, RICHARDSON, and NEWELL, JJ., joined.

A jury convicted Patrick Marshall of felony assault against a family member. On appeal, the court of appeals held the evidence legally sufficient but the omission of the words "bodily injury" from the jury charge's application paragraph egregiously harmed Marshall.[1] We agree that the evidence was sufficient, but disagree that the jury charge egregiously harmed Marshall because the jury charge sufficiently required the jury to find bodily injury by impeding normal breathing—a bodily injury *per se*. We therefore reverse the judgment below.

## I. Facts and Procedural History

While the parties do not dispute the facts, a brief background is necessary. On September 5, 2005, Marshall and his wife, Shawne Marshall physically fought. The fight moved into the bedroom where Marshall pushed Shawne onto the bed. He straddled her and put a pillow over her face, holding down each side of the pillow. Shawne testified that his body weight pinned her to the bed and the pillow affected her breathing. She further testified that she never passed out and never lost the complete ability to breathe. Nevertheless, she testified that she could not take deep breaths. The jury charge instructed the jury to return a guilty verdict if they found

that the defendant, Patrick James Marshall, ... did then and there intentionally, knowingly, or recklessly impede the normal breathing or circulation of the blood of Shawne Marshall by blocking the nose or mouth of Shawne Marshall with a pillow, and the said Shawne Marshall was then and there a member of the defendant's family or household.

Marshall's trial counsel did not object to the omission of "bodily injury." The jury convicted Marshall under Penal Code § 22.01, felony assault against a family member. Penal Code § 22.01 provides in relevant part:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

. . .

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

. . .

(2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:

. . .

(B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth .... [2]

On appeal, Marshall claimed that the trial judge erred because the jury could return a guilty verdict without finding that

---

1. *Marshall v. State*, Nos. 03–11–00475–CR & 03–11–0476–CR, 2014 WL 1365659, at *3–4 (Tex.App.—Austin Apr. 3, 2014) (mem. op., not designated for publication).

2. TEX. PENAL CODE § 22.01 (West 2011).

Marshall caused a bodily injury. Essentially, Marshall argued that omitting "bodily injury" from the application paragraph relieved the state of its burden to prove an essential element. Marshall also claimed there was insufficient evidence to support the jury's verdict.

The court of appeals agreed that the jury charge was erroneous, found the error resulted in egregious harm, vacated the conviction, and remanded for a new trial.[3] The court of appeals, however, rejected Marshall's evidentiary insufficiency claim.[4] Both parties petitioned for discretionary review and we granted the petitions to determine whether the evidence sufficiently supported the jury's verdict and whether omitting "bodily injury" from the jury charge's application portion caused egregious harm. We find the jury's verdict was supported by sufficient evidence and that Marshall did not suffer egregious harm because of the jury charge's omission.

## II. Analysis

### A. Jury Charge Error

■ Upon a finding of error in the jury charge, there are separate standards of review depending on whether the defendant timely objected to the jury instructions.[5] If the defendant timely objected to the jury instructions, then reversal is required if there was some harm to the

defendant.[6] If the defendant did not timely object to the jury instructions, then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial.[7]

■ Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.[8] In examining the record to determine whether charge error is egregious, we have traditionally considered: (1) the entirety of the jury charge itself, (2) the state of the evidence, (3) counsel's arguments, and (4) any other relevant information revealed by the entire trial record.[9] Egregious harm is a difficult standard to meet, and such a determination must be made on a case-by-case basis.[10] Neither party bears the burden on appeal to show harm or lack thereof under this standard.[11] Instead, courts are required to examine the relevant portions of the *entire* record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error.[12]

■ Here, we find the trial judge erred in omitting "bodily injury" from the jury charge but the error did not egregiously harm Marshall. To reach this result, we begin by reviewing the entire jury charge. The abstract portion defined bodily injury pursuant to § 1.07(a)(8), even though the

3. *Marshall,* 2014 WL 1365659, at *17.

4. *Id.* at *5, *12–13.

5. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

6. *Id.*

7. *Id.*

8. *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex. Crim.App.2007).

9. *See, e.g., Gelinas v. State,* 398 S.W.3d 703, 705–06 (Tex.Crim.App.2013) (citing *Almanza,* 686 S.W.2d at 171).

10. *Taylor v. State,* 332 S.W.3d 483, 489 (Tex. Crim.App.2011).

11. *Reeves v. State,* 420 S.W.3d 812, 816 (Tex. Crim.App.2013).

12. *Arline v. State,* 721 S.W.2d 348, 351–52 (Tex.Crim.App.1986) (emphasis in original).

application portion lacked a reference to "bodily injury." However, the omission did not cause harm. To reach this conclusion, we need only examine the statute and give effect to its plain meaning if the statutory language is unambiguous.[13]

Ordinarily, assault is a Class A misdemeanor and occurs when one "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse."[14] Yet a simple assault may be enhanced to a third-degree felony if committed against a family member[15] "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."[16] Bodily injury "means physical pain, illness, or any impairment of physical condition."[17]

Moreover, "impairment of physical condition" is a term of common usage.[18] Black's Law Dictionary defines "impairment" as "[t]he quality, state, or condition of being damaged, weakened, or diminished; specif., a condition in which a part of a person's mind or body is damaged or does not work well, esp. when the condition amounts to a disability."[19] "'[P]hysical impairment' ... include[s] the diminished function of a bodily organ."[20] While the statute does not define "impeding the normal breathing of a person," an impediment is ordinarily understood as "[a] hindrance or obstruction."[21] In other words, obstructing or impeding a person's ability to

breath impairs a person's physical condition—a form of bodily injury.

Correspondingly, the plain meaning of the statutory language indicates that any impediment to normal breathing is a bodily injury. The Legislature decided that bodily injury is the result to be prevented, making the conduct causing it eligible for punishment. It also decided that causing bodily injury, particularly, impeding normal breathing, is reprehensible and eligible for greater punishment. In short, this plain meaning does not contradict the Legislature's intended result.

In this case, the application paragraph required the jury to find Marshall guilty if it found he impeded Shawne's normal breathing when he covered her face with a pillow. A necessary element here is impeding another person's breathing, which as explained above is a type of bodily injury. The jury did not need to find that Shawne actually stopped breathing or that she was unconscious. Rather, the jury only needed to find that Marshall impeded her breathing, the particular type of bodily injury in this case. By finding that Marshall impeded Shawne's breathing, the jury found bodily injury *per se*.

To that end, we overrule the court of appeals' holding that Marshall suffered egregious harm when the jury charge omitted "bodily injury" in the application paragraph. Omitting "bodily injury" in the application paragraph did not cause egregious harm because the application

13. *Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991).

14. Tex. Penal Code § 22.01 (West 2011).

15. Texas Family Code §§ 71.0021(b), 71.003, 71.005 (West 2011).

16. Tex. Penal Code § 22.01(b)(2)(B) (West 2011).

17. *Id.* § 1.07(a)(8).

18. *Lane v. State,* 763 S.W.2d 785, 787 (Tex. Crim.App.1989).

19. Black's Law Dictionary 869 (10th ed.2014).

20. *Garcia v. State,* 367 S.W.3d 683, 688 (Tex. Crim.App.2012) (citing collecting cases).

21. Black's Law Dictionary 870 (10th ed.2014).

paragraph required the jury to find a specific type of bodily injury. The error neither deprived Marshall of any valuable rights nor vitally affected his defensive theory. Thus the trial court's error did not egregiously harm Marshall when it omitted "bodily injury" from the jury charge in this case.

## B. Legal Sufficiency

■ We examine legal sufficiency issues under *Jackson v. Virginia*, where we view the evidence in the light most favorable to the verdict.[22] We then decide, based on the evidence whether a rational jury could find all the requisite elements beyond a reasonable doubt.[23] We defer to the jury's finding when the record provides a conflict in the evidence.[24] Here, we overrule Marshall's claim that the evidence introduced at trial was legally insufficient to support a finding that he impeded Shawne's normal breathing or a finding that he caused bodily injury. Rather, the jury only needed to determine whether the evidence supported a finding that he impeded Shawne's breathing, thereby finding bodily injury *per se.*

■ In this case, Shawne testified that Marshall tried to smother her when he pressed a pillow hard and tight against her face. Shawne testified and demonstrated with her hands how he held the pillow over her face. She also testified that she was unable to take deep breaths while Marshall held a pillow against her face. Even though Shawne testified that she never lost consciousness and never was completely unable to breath, that is not required under bodily injury, as explained above. An impediment to normal breathing does not necessarily prevent breathing altogether because an impediment is merely a hindrance or obstruction. Shawne's testimony that she was never entirely unable to breathe does not foreclose the possibility that her normal breathing was hindered. We are unconvinced by Marshall's argument that deep breaths do not amount to normal breathing. A jury could reasonably infer that Marshall impeded her normal breathing and the evidence is legally sufficient to support such a finding. We therefore hold that the jury had sufficient evidence to find Marshall guilty of impeding Shawne's normal breathing, the third-degree felony assault.

## III. Conclusion

When the jury found that Marshall impeded Shawne's normal breathing, it necessarily found that he caused a bodily injury. While the jury charge erroneously omitted a distinct "bodily injury element," doing so did not cause Marshall egregious harm because impeding normal breathing is *per se* a bodily injury under § 22.01(b)(2)(B). The court of appeals erred in holding otherwise.

We overrule Marshall's legal-sufficiency challenge, reverse the court of appeals' holding that the erroneous jury charge caused egregious harm, and reinstate the jury's verdict. Further, we dismiss as improvidently granted cause number PD–0509–14 because the parties' legal arguments pertaining to Marshall's conviction for felony assault against a family member by suffocation arises from cause number PD–0510–14, not PD–0509–14.

YEARY, J., filed a concurring and dissenting opinion in which MEYERS, J., joined and in which KELLER, P.J., joined as to Part I only.

KELLER, P.J., dissented.

22. 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010).

23. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

24. *Id.* at 326, 99 S.Ct. 2781.

## CONCURRING AND DISSENTING OPINION

YEARY, J., filed a concurring and dissenting opinion in which MEYERS, J., joined and in which KELLER, P.J., joined as to Part I only.

I disagree that the court of appeals erred to reverse Appellant's conviction for felony assault against a family member on the basis of jury charge error.[1] The court of appeals correctly concluded that the application paragraph failed to require the jury to find that Appellant caused bodily injury before convicting him. *Marshall v. State*, No. 03–11–00475–CR, 2014 WL 1365659, at *6 (Tex.App.—Austin Apr. 3, 2014) (mem. op., not designated for publication). Like a majority of this Court today, I conclude that this omission constituted jury charge error; but I reach that conclusion on the basis of a much different view of the statutory language involved. Unlike the Court today, I conclude that the jury charge error caused Appellant egregious harm. Finally, I agree that the evidence was legally sufficient to support the verdict—but again, I base that conclusion on a different rationale than the Court's.

## I. TRIAL ERROR

### Jury Charge Error

The Court finds that the trial court erred by failing to include in the application paragraph of the guilt-phase jury charge a requirement that the jury must find that Appellant caused his wife "bodily injury" before it could convict him. Majority Opinion at 843. The application para-

graph *did* require the jury to find that Appellant impeded his wife's normal breathing by blocking her nose and mouth as a prerequisite to conviction. *Id.* at 846. The Court concludes that a finding that Appellant impeded Shawne's breathing amounts to a finding of "bodily injury *per se* [,]" *id.* at 844, and on that basis it holds that Appellant suffered no egregious harm by the jury charge error for *Almanza* purposes. *Id.* at 845. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g.). I agree only that the application paragraph was erroneous. I cannot accept the Court's conclusion that "impeding normal breathing . . . by blocking the . . . nose or mouth" constitutes "bodily injury" *per se.*

Intentionally, knowingly, or recklessly causing bodily injury to another constitutes the offense of assault, and is ordinarily a Class A misdemeanor. TEX. PENAL CODE § 22.01(a) & (b). Under certain circumstances, that conduct is elevated to a third degree felony, including when it is committed against a family member "by intentionally, knowingly, or recklessly impeding the normal breathing . . . of the [victim] . . . by blocking the [victim's] nose or mouth[.]" TEX. PENAL CODE § 22.01(b)(2)(B). That is to say, when an actor causes the bodily injury *by* impeding the normal breathing of a family member, *by* blocking that family member's nose and/or mouth, the actor has committed the more serious offense of third degree felony family assault.

Simple assault is a result-of-conduct offense. *Landrian v. State*, 268 S.W.3d 532,

---

1. Appellant was convicted of two offenses: aggravated assault with a deadly weapon (our cause number PD–0509–14) and felony assault against a family member (our cause number PD–0510–14). Both convictions were enhanced with two prior convictions, and Appellant received concurrent thirty-

   eight year sentences. The Court today improvidently grants the petitions (State's and Appellant's) for discretionary review in cause number PD–0509–14, and I do not disagree with that disposition. My separate opinion pertains solely to the Court's disposition of the petitions in cause number PD–0510–14.

536 (Tex.Crim.App.2008). Unless and until an actor causes bodily injury, he has not committed *either* a Class A misdemeanor *or* a third degree felony. According to the statute, he commits the third degree felony (and not *just* the Class A misdemeanor) once he causes bodily injury to a family member and has done so in a particular way, namely, *"by* ... impeding the normal breathing or circulation of the blood of [the family member] *by* applying pressure to the [family member's] throat or neck or *by* blocking [the family member's] nose or mouth[.]" Tex. Penal Code § 22.01(b)(2)(B) (emphasis added). This compound adverbial phrase, describing the particular way in which the third degree felony offense is committed, sets out a particular manner and means by which the actor must be found to have caused bodily injury before he may be convicted. It seems to me to describe a nature-of-conduct type of element which is necessary to the greater offense;[2] but it remains nothing more than a particular manner and means by which the bodily injury must be caused. It need not always constitute bodily injury *itself*, however, before it may serve to justify a conviction for felony family assault. And it certainly is not necessarily *co-extensive* with bodily injury. Therefore, a jury finding that a defendant has impeded the normal breathing of his family member is not necessarily a jury finding that he has also caused his family member bodily injury.

To illustrate, suppose the Legislature were to add a provision to the murder statute to make it a more serious grade of homicide (another result-of-conduct offense), providing an increased minimum punishment when an actor causes the death of an individual "by stabbing him with a knife," and thereby manifesting a legislative judgment that this is a particularly blameworthy way to be killed. The Legislature would thus make commission of the more serious homicide offense contingent on causing the requisite result (death) by a particular manner and means (by stabbing with a knife). In doing so, however, the Legislature would not have necessarily equated stabbing with a knife with causing death. It would have simply indicated that, if the result (death) happens to be caused by stabbing with a knife (a particular manner and means that may serve to cause that result), then the offense is a more serious one. Similarly, impeding the normal breathing of a person will not *invariably* cause that person bodily injury. But if bodily injury does happen to be caused in that way—by impeding a family member's normal breathing long enough or with enough force to cause "physical pain, illness, or any impairment of physical condition[,]" Tex. Penal Code § 1.07(a)(8)—then a third degree felony, not just a Class A misdemeanor, has been committed.

It seems unlikely to me that the Legislature truly intended that, for example, by

---

**2.** In my concurring opinion in *Price v. State,* 457 S.W.3d 437, 444 (Tex.Crim.App.2015) (Yeary, J., concurring), I observed:

> To me, impeding breath ... sounds a lot more like the description of a *type* of conduct than the description of a particular *result* of conduct. Certainly, causing bodily injury is a result-oriented offense. But when the statute goes on to proscribe a very particular way of causing that result—by impeding breath ...—and then makes that particular way of causing bodily injury a

more serious offense, it seems to me that the Legislature has veered into nature-of-conduct territory.

For present purposes, the point is that, regardless of whether impeding breath is a nature-of-conduct element (as I believe) or a result-of-conduct element, it serves to describe a particular manner or means by which bodily injury must be caused before the offense is elevated to the status of a third degree felony.

merely *recklessly* blocking the nose and/or mouth of a family member, however fleetingly, an actor should necessarily be subject to punishment for the commission of a third degree felony. The Court today reaches this result by comparing part of the statutory definition of "bodily injury" in Section 1.07(a)(8) of the Penal Code, "impairment of physical condition," to a dictionary definition of "impediment." Majority Opinion at 842–44. From this comparison, the Court concludes that Section 22.01(b)(2)(B) plainly "indicates that any impediment to normal breathing is a bodily injury." *Id.* at 844. In other words, an impediment to breathing is necessarily an "impairment of [a] physical condition." I am not convinced. In fact, after examining the same statutory and dictionary definitions that the Court does, I conclude that an impediment does not necessarily amount to an impairment.

Section 1.07(a)(8) defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). A definition of "impairment" does not appear in Section 1.07, but Black's Law Dictionary defines it to be "a condition in which part of a person's . . . body is damaged or does not work well[.]" BLACK'S LAW DICTIONARY 869 (10th ed.2014). As the Court notes, we have defined "impairment" to include "the diminished function of a bodily organ." Majority Opinion at 844 (citing *Garcia v. State*, 367 S.W.3d 683, 688 (Tex.Crim.App.2012)). By contrast, Black's defines an "impediment" as a "hindrance or obstruction." BLACK'S LAW DICTIONARY 870 (10th ed.2014). From these definitions, the Court concludes that "obstructing or impeding a person's ability to breath impairs a person's physical condition—a form of bodily injury." *Id.* I do not believe this conclusion necessarily follows from the premises.

My reasoning proceeds as follows: One of the statutory ways for an actor to cause bodily injury is to cause an "impairment to physical condition." TEX. PENAL CODE § 1.07(a)(8). An actor "impedes" his victim's breathing if he "hinders or obstructs" it, however momentarily, so that his victim cannot take air through her trachea into her lungs. The trachea and lungs are not yet themselves "impaired," however, and if the momentary "hindrance or obstruction" to normal breathing is removed, the trachea and lungs will ordinarily resume their normal functions immediately, "unimpaired." Her "physical condition" has not changed, and she has not yet suffered any "bodily injury." None of her bodily organs has suffered even a "diminished" capacity to "function" properly. Of course, if the "hindrance or obstruction" continues unabated for a prolonged period of time, or if it is applied with sufficient force, the victim could well suffer a diminution of function in any number of organs, not the least of which might be her brain. Thus, even a minor, non-permanent diminution of organ function—momentary loss of consciousness, for example—might well serve to constitute "impairment." In this hypothetical scenario, the "impediment" is protracted or forceful enough that it serves to cause the "impairment." But that does not render "impediment" and "impairment" one and the same.

It is true that we have said (particularly when it comes to "bodily injury" in the form of the infliction of *pain*) that the "definition [of bodily injury in Section 1.07(a)(8)] appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex.Crim.App.1989). I do not dispute this proposition. But the fleeting obstruction of the nose and mouth so that normal breathing is only momentarily impeded

seems little more than a "mere offensive touching" to me,[3] and not enough to cause the "diminished function of a bodily organ" necessary to constitute the "impairment of physical condition" contemplated by Section 1.07(a)(8). I believe the Court is mistaken to hold that when a jury finds that an actor has impeded the normal breathing of his victim, it has found bodily injury *per se*. Majority Opinion at 844.

It occurs to me that if the Court is correct that impeding normal breathing constitutes bodily injury *per se*, then there should be no error to begin with in the application paragraph of Appellant's jury charge. According to the Court's reasoning, the jury was not authorized to convict Appellant in the absence of an explicit finding with respect to the "bodily injury" element of the offense. If the impediment of normal breathing constitutes "bodily injury" *per se*, then instructing the jury that it must find that Appellant impeded Shawne's normal breathing before it could convict Appellant of family-violence assault would necessarily constitute an instruction that it must find that Appellant caused her bodily injury. Accepting the Court's conclusion that impeding Shawne's breathing was simply "the particular type of bodily injury in this case[,]" *id.* it necessarily follows that the application paragraph required the jury to find every element necessary to convict Appellant. The Court should have no occasion, then, to inquire whether Appellant was egregiously harmed, since it has effectively found that there was no error in the jury charge. For my part, I do not believe that "impeding the normal breathing" constitutes "bodily injury" *per se*, and consequently I must ask whether Appellant suffered egregious harm. Like the court of appeals, I conclude that he did.

## Egregious Harm

As I see it, the question is whether it is likely that the jury could have convicted Appellant simply for impeding Shawne's normal breathing momentarily, without ever going on to ask itself whether that impediment was sufficiently protracted, or occurred with sufficient force, as to cause "bodily injury"—that is to say, "physical pain" or "impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). If that likelihood is great, then there is a real and significant chance that the jury convicted Appellant without first determining beyond a reasonable doubt that he committed every element of the offense. I would say that this would demonstrate that the jury charge error affected the very basis of the case and deprived Appellant of a valuable right. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex.Crim.App.2007).

As the court of appeals pointed out, the prosecutor told the jury—on more than one occasion—that all the State had to prove to justify a guilty verdict was that Appellant "blocked [Shawne's] nose and mouth, and that impeded her normal breathing." *Marshall*, 2014 WL 1365659, at *5-6. She told the jury this during voir dire. *Id.* at *6. And then she told them again—quite pointedly—during her final summation at the guilty phase of trial:

Now, the Court's instructions give you what we call application paragraphs, and that's what you look at to decide did the State prove what they're saying he did.

And when you look at the [incident], just ask yourself ... Do I believe he put a pillow over her face and impeded her normal breathing?

If as you sit here, after hearing all of the testimony and looking through the

---

**3.** *See* TEX. PENAL CODE § 22.01(a)(3) & (c) (making "physical contact" that is merely "offensive" or "provocative" a Class C misdemeanor).

evidence and hearing from everybody—if you sit here and you think, "Yeah, I think that happened," then you find him guilty. That's what the Court's instructions tell you to do.

Thus, the prosecutor compounded the jury charge error, encouraging the jury to convict Appellant on the basis of finding an impediment, without deliberating further to determine whether that impediment was sufficient to cause bodily injury in the form of physical pain or impairment of a physical condition.

Moreover, focusing on the state of the evidence in the case, I see no compelling proof that Shawne actually did suffer either pain or impairment from Appellant's act of holding a pillow over her face. In fact, nowhere does the evidence demonstrate that, when Appellant covered Shawne's face momentarily, his action caused her *either* an impairment of physical condition *or even any pain*. The totality of testimony relating to the attempted smothering is excerpted below.

The State's first witness was one of the police officers who responded to the scene, Kyle Police Department Officer Daniel Gooding. Gooding had characterized Appellant's conduct toward Shawne in his offense report as an "attempted suffocation." On re-direct, the prosecutor followed up:

Q. And, in fact, I don't know how familiar you are with what it is to assault someone by suffocation, but are you aware that all he has to do is impede her normal breathing?

A. Yes, ma'am.

Q. So are you required—is it a requirement that she actually couldn't breathe at all?

A. By that definition, no.

Q. Okay. Is it—it's definitely not required that a victim has to lose consciousness, is it?

A. No, ma'am.

Immediately on re-cross-examination, Gooding confirmed:

Q. And she told you that she didn't lose any breath. You remember that?

A. She didn't think it was quick enough that she lost any breath [sic]. She didn't.

This was the only testimony with respect to the "attempted suffocation" that did not come from Shawne herself.

Shawne's own testimony failed to directly establish that the pillow held over her face caused her to suffer either the impairment of a physical condition or physical pain. She mentioned for the first time on direct examination that Appellant "put the pillow over my head," that she struggled with him, and that she was able to "kick him off of" her. She later described the incident in greater detail as follows:

Q. Can you show me with your hands how he was holding the pillow over your head?

Just use your first—just use your own—your own—

A. This is the pillow—

Q. Uh-huh.

A. —and he it had [sic] on both sides (indicating).

Q. Okay. And so both sides of your head?

A. Right.

Q. So—

A. Like, he had the pillow—each end of the pillow, holding it and pressing down.

Q. So how did that feel on your face? Did it—what did you feel? Did you feel any pressure?

A. It was hard. I mean, it was tight. It was pressed against my face.

Q. So the pillow was pressed tight against your face?

A. Yes.

Q. He was using pressure to keep it there?

A. Yes.

Q. Were his hands on either side of your face or on top of your face?

A. Either side.

* * *

Q. Were you able to take deep breaths? Did it impede your normal ability to breathe when he had that pillow on your face?

A. I wasn't able to take deep breaths.

Q. Now, the officer asked you that night did you lose consciousness—

A. Right.

Q. —and could you—could you breath?

A. Right.

Q. And you said no, right?

A. Well, I didn't think it was on there long enough for—I didn't—* * * I just remember fighting and my face rubbing up against the pillow. I don't remember not being able to breathe.

On cross-examination, Appellant asked Shawne about her statement to the responding officers, and she replied consistently:

Q. All right. Now, Sergeant Oaks, the female officer there—remember her?

A. Yes.

Q. She also asked you specifically, Can I ask you something real quick? When he had the pillow over your head, could you breathe, and did you lose consciousness?

And your response was, quote. It wasn't over my head long enough.

And that was your response?

A. Correct.

Q. And it was true?

A. Correct.

Q. So you could breathe?

A. Like I said, to me—

Q. Yes or no, ma'am? Could you breath or not?

THE COURT: You can say "yes" or "no," and you can explain your—explain your answer.

A. I believe I could still breath. It happened so fast that I don't remember not being able to breath. I didn't pass out. I don't remember gasping for air when he finally got up. All I remember is my head going back and forth under the pillow.

During Shawne's re-direct testimony, the prosecutor was permitted to ask her to compare the smothering incident at issue here with an earlier incident in which Appellant had choked her:

Q. Okay. We need to tell the jury about this—the prior choking incident, but let's keep it short and brief....

A. ... And he backed me up against the wall, had his hands around my neck all the way up here (indicating). And he squeezed hard to me, and I was on my tippy toes because he had me jacked up against the wall. And I—he finally let me go. And I couldn't talk for a few minutes. I felt like my tongue was in my mouth—or blocking my way of talking, and I threw up.

* * *

Q. Now, that time you really couldn't breathe at all, could you?

A. No.

Q. So when you're comparing your experience of having his hands—did he use one hand or two hands?

A. One.

Q. So when you're comparing the experience of having his hand on your neck blocking your airway, comparing that to having the pillow over your face—

A. That was absolutely worse.

Q. So when you're asked if you couldn't breathe during this incident, are you comparing it to that—

A. I would absolutely say I could not breath.

Q. On that incident?

A. On that incident.

Shawne's testimony unequivocally establishes that, unlike on the prior occasion when Appellant's act of choking Shawne blocked her breathing, when Appellant placed the pillow over her face—the incident at issue in this case—she never lost consciousness and in fact was still able to breathe at least to a limited extent. Thus, though the evidence shows a minimal impediment to Shawne's normal breathing, I see no evidence of any resulting impairment of physical condition. As for pain, there is no testimony of that either. Even when the prosecutor expressly invited Shawne to relate how the pillow over her face had felt, she acknowledged only having experienced the pressure and tightness, but she made no mention of having suffered any pain.

Considering the entire jury charge, the state of the evidence, and the arguments of counsel, *Almanza*, 686 S.W.2d at 171, I can only conclude that the record demonstrates a substantial likelihood that the jury convicted Applicant based upon nothing more than the evidence that he impeded Shawne's normal breathing, without making the necessary additional finding that this impediment caused Shawne either physical pain or the impairment of a physical condition. For this reason, I would affirm the court of appeals's holding that the jury charge instruction caused Appellant egregious harm.

## II. LEGAL SUFFICIENCY

It may come as a surprise that I also agree with both the Court today, and with the court of appeals majority, that the evidence was legally sufficient. I do disagree, however, with both courts' bases for reaching that conclusion. I would *not* hold the evidence legally sufficient because impeding the normal breathing of a family member constitutes "bodily injury" *per se*, as the Court does today. Majority Opinion at 9. Nor do I believe, as a majority of the court of appeals did, that the evidence minimally established that, by impeding Shawne's normal breathing, he caused her either physical pain or an impaired physical condition. *Marshall*, 2014 WL 1365659, at *4. Instead, I would hold the evidence to be minimally sufficient on a different theory altogether.

There is evidence in the case that Appellant not only attempted to smother Shawne with a pillow, but also that, just before he placed the pillow over her face, he also briefly "strangled" her. Leading up to her testimony with regard to the pillow incident, Shawne testified:

A . . . . . I just remember ending up on the bed, but I didn't place myself there. And he strangled me while we were on the bed, and he grabbed the pillow again and told me, If I can't have you, nobody can.

And he put the pillow over my head, and I was struggling with him[.]

Under the indictment and jury charge in this case, I believe strangulation would have been an available alternative theory by which a rational jury could have convicted Appellant under a hypothetically correct jury charge.

The indictment in this cause is certainly less than ideal. Like the faulty application paragraph in the jury charge, the indict-

ment failed even to allege that Appellant caused Shawne bodily injury. Instead, it simply alleged that Appellant, with the requisite culpable mental state, "impede[d] the normal breathing *or circulation of the blood* of Shawne Marshall by blocking the nose or mouth of Shawne Marshall with a pillow"—as if that would suffice to allege bodily injury. (Emphasis added.) Still, flawed as it was, the indictment did include the alternative statutory theory that Appellant impeded Shawne's blood circulation—essentially strangulation. Strangely, it did not include the further statutory theory that one would ordinarily expect to accompany an allegation of strangulation, namely, that Appellant perpetrated the strangulation by "applying pressure to" Shawne's "throat or neck[.]" TEX. PENAL CODE § 22.01(b)(2)(B).[4]

The application paragraph, like the indictment, included the theory of strangulation. Also like the indictment, however, the application paragraph omitted the further statutory requirement that the jury find that, when Appellant impeded the blood circulation, he did so specifically by applying pressure to Shawne's throat or neck. Majority Opinion at 842–43 (setting out application paragraph). Nor did the application paragraph specifically include "pain" as an operative theory of "bodily injury." *Id.* But the abstract-definitions

portion of the jury charge contained the full statutory definition of "bodily injury," including "physical pain." The abstract definitions also set out the full text of Section 22.01(b)(2)(B) of the Penal Code, including the manner and means ("by applying pressure to the person's throat or neck") that typically corresponds to the strangulation theory of causing bodily injury.

Under *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997), a hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Both the indictment and the abstract portion of the jury charge would have authorized the jury to convict Appellant of family violence assault under Section 22.01(b)(2)(B), on the basis of evidence that he impeded Shawne's blood circulation. The fact that the particular manner and means that corresponds to strangulation was not included in the indictment or application paragraph should not be enough, in my opinion, to prevent the hypothetically correct jury charge from embracing the State's strangulation theory.[5] And the evi-

---

4. Either strangulation or smothering may cause injury or death by asphyxiation. *Sanchez v. State,* 376 S.W.3d 767, 774 (Tex.Crim. App.2012). Smothering typically causes asphyxia by preventing oxygen from getting into the lungs for distribution to other organs, by, for example, covering the victim's mouth and nose. *Id.* Strangulation typically entails pressure to the neck or throat area and causes asphyxia by preventing oxygen from getting to the lungs and/or preventing oxygenated blood from circulating from the lungs to the brain. *Id.*

5. I am aware of the Court's holding in *Geick v. State,* 349 S.W.3d 542, 545 (Tex.Crim.App.

2011), that an indictment that alleges only one of several *statutory* alternative manners and means of committing an offense will not support a conviction based upon evidence that only satisfies another unpled statutory alternative manner and means. Here, however, the indictment *did* allege that Appellant impeded Shawne's blood circulation. Thus, it authorized a conviction under that theory in contemplation of *Malik. See Curry v. State,* 30 S.W.3d 394, 405 (Tex.Crim.App.2000) (hypothetically correct jury charge should include those alternative statutory theories "authorized by the indictment"). That ought to be enough to authorize conviction under a strangulation theory even absent a further

dence would be sufficient to convict Appellant under such a theory so long as the jury found that this impediment of blood circulation caused Shawne "physical pain" or "impairment of [a] physical condition." TEX. PENAL CODE § 1.07(a)(8). Unlike placing a pillow over the face, strangulation, however briefly it may last, is *at least* an inherently painful experience. A rational jury could infer that the direct physical contact necessary to accomplish even the briefest act of strangulation would cause physical pain.

For this reason, I agree that the evidence was legally sufficient to convict Appellant of the third degree felony offense of family assault. I would affirm the court of appeals judgment in full. Because the Court reverses the court of appeals's judgment with respect to trial error, instead affirming Appellant's conviction, I respectfully dissent.

manner and means allegation in the indictment that Appellant applied pressure to Shawne's throat or neck.