

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00089-CR

Martin **NNAMDI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR7399
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: February 14, 2024

AFFIRMED

Appellant Martin Nnamdi appeals his conviction for repeated violation of a protective order, raising sufficiency and jury charge issues. We affirm.

### BACKGROUND

Nnamdi and Analiza Tavel met, started dating, and had a child together. Tavel testified that the relationship was "very turbulent." In 2018, she sought and obtained an agreed protective order under section 85.005 of the Texas Family Code. The order prohibited Nnamdi from, among other things: (1) communicating directly with Tavel in a threatening or harassing matter; (2)

communicating in any manner with Tavel except through her attorney or Kid Share; or (3) going within 200 yards of Tavel's residence. Nnamdi continued to contact Tavel and repeatedly went to her residence.

A grand jury indicted Nnamdi for repeated violation of the agreed protective order under Texas Penal Code section 25.072. The indictment listed fourteen violations between June 2019 and January 2020. The indictment included two allegations that Nnamdi directly communicated with Tavel in a threatening or harassing manner, five allegations that he communicated with her in violation of a court order, and seven allegations that he went "to or near" her residence.

The jury heard testimony from Tavel and several police officers who had responded to her calls. The trial court admitted video and photographs Tavel took of Nnamdi outside her house as well as numerous texts he sent her. He argued the State failed to prove he had notice of the protective order because it failed to provide evidence that he had signed it or had been served with it. The jury convicted him, and the trial court sentenced him to six years' confinement. Nnamdi appeals.

## ANALYSIS

### *Sufficiency*

Nnamdi concedes the "State presented evidence sufficient to support a jury finding [him] guilty on thirteen of the fourteen allegations." He argues, however, that the evidence is insufficient to prove the December 19, 2019 violation because the State asked Tavel about a "December 19, 2020" violation rather than the December 19, 2019 violation alleged in the indictment. And because "any individual juror or jurors may have relied on the December 19, 2019 allegation" in finding him guilty, he contends he is entitled to either an acquittal or a judgment on the lesser-included offense of violating section 25.07.

*Applicable Law and Standard of Review*

Under section 25.072(a), "[a] person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 25.07." TEX. PENAL CODE ANN. § 25.072(a). Under section 25.07(a)(2), a person commits an offense by communicating: (A) "directly with a protected individual. . . in a threatening or harassing manner" or (C) "in any manner with the protected individual . . . except through the person's attorney or a person appointed by the court, if the violation is of an order described by this subsection and the order prohibits any communication with a protected individual"; a person also commits an offense under section 25.07(a)(3) by "go[ing] to or near any of the following places as specifically described in the order. . . (A) the residence . . . of a protected individual. . . ." TEX. PENAL CODE ANN. § 25.07(a)(2)(A), (a)(2)(C), (a)(3)(A). "If the jury is the trier of fact, members of the jury must agree unanimously that the defendant, during a period that is 12 months or less in duration, two or more times engaged in conduct that constituted an offense under Section 25.07." TEX. PENAL CODE § 25.072(b).

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244,

262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Application*

While Nnamdi frames this issue as one of legal sufficiency, he acknowledges the prosecutor probably just misspoke when he asked Tavel about December 19, 2020 instead of December 19, 2019. We agree. In his direct examination, the prosecutor questioned Tavel about the allegations in chronological order beginning with June 2019 before moving on to September 2019. Then he said, "I want to go to December and talk about the violations in December." In response to a question about "December 19, 2020," Tavel stated: "The 19th he came to my home knocking on the window, knocking on the door. I don't remember if that was the day he opened the door to my vehicle, that week of -- there was that week the 19th and there was another incident on the 21st of December where my vehicle the door was unlocked. He opened it he took my wireless earbuds." She went on to say that she took video and photos of the December 21 incident. Screen shots of the videos and photos were admitted at trial, and they are dated December 21, 2019. After asking Tavel about the December incidents, the State asked about "New Years Eve 2019" and then about incidents in January of 2020.

In addition, San Antonio Police Department Detective Chris Montoya testified that in December of 2019, he was assigned to work patrol. On December 19, he was dispatched to Tavel's residence after police received a call alleging that Nnamdi had violated a protective order. After Montoya arrived at Tavel's residence, he learned that Nnamdi "was previously there in his car" and patrolled the area looking for Nnamdi. He did not find Nnamdi, so he wrote a police report and sent it to the investigative unit.

Given the context, we do not view the prosecutor's misstatement as fatal to the sufficiency of the evidence of the December 19, 2019 incident. Especially in light of Montoya's testimony, jurors would reasonably have understood the evidence to be that Nnamdi had come "knocking on the window, knocking on the door" on December 19, 2019. *Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the verdict and resolving all reasonable inferences from the evidence in the verdict's favor, we determine a rational trier of fact could have found the December 19, 2019 violation beyond a reasonable doubt. *Nowlin*, 473 S.W.3d at 317. We therefore overrule Nnamdi's first issue.

### *Jury Charge*

Next, Nnamdi argues the trial court erroneously charged the jury by using the statutory language in the application section and asking whether he went "to or near" Tavel's residence rather than using the language from the protective order and asking whether he went "within 200 yards" of Tavel's residence. Nnamdi argues the error is egregiously harmful, in part, because the application section was erroneous in another way—it failed to allege the element of "two or more times." The State disagrees that the "to or near" language was erroneous but concedes the trial court erred in failing to allege the element of "two or more times" in the application charge. The State argues *that* error is not egregiously harmful. Neither party objected to these aspects of the jury charge.

#### *Applicable Law and Standard of Review*

To be reversible, any unpreserved jury-charge error must result in egregious harm. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). "Under *Almanza*, reviewing courts should consider the following four factors: 1) the charge itself; 2) the

state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Olivas*, 202 S.W.3d at 144.

*Application*

We agree with the parties that the trial court erred in omitting the "two or more times" language from the application section of its charge. *Niles v. State*, 555 S.W.3d 562, 572 (Tex. Crim. App. 2018) (failure to charge on element of offense is error); *Wesley v. State*, 605 S.W.3d 909, 916 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("Under section 25.072, an element of the offense is that the defendant engaged in conduct two or more times in less than 12 months."). We assume, without deciding, that the trial court also erred in omitting the "within 200 yards" language from the application section. But because these omissions did not affect the very basis of the case, deprive Nnamdi of a valuable right, or vitally affect his defensive theory, we conclude they did not cause egregious harm.

**The charge itself.** <u>"Two or more times."</u> This charge is six pages total. It set out the "two or more times" language twice in the abstract section—once on the first page of the charge setting out the language of section 25.072(a), and again on the fourth page setting out section 25.072(b)'s unanimity requirement. This unanimity requirement appeared directly before the application section on page five. Given the presence of the phrase twice in the abstract section—including once directly in front of the application section—we doubt the jury would have misunderstood the task at hand. *See Vasquez v. State*, 389 S.W.3d 361, 371 (Tex. Crim. App. 2012) (omission of definition in application charge ameliorated by its inclusion in the immediately preceding abstract charge); *Wesley*, 605 S.W.3d at 916–17 (omission of phrase "two or more times" from abstract charge did not cause defendant egregious harm given appearance of phrase in application charge).

"Within 200 yards." In the application paragraph, the trial court asked the jury whether Nnamdi went "to or near" Tavel's residence (the statutory language) rather than whether he went "within 200 yards" of her residence (the protective order language). The jury charge tracks the statute, but as Nnamdi points out, the statute itself refers to the court order. As is relevant here, the statute provides:

> (a) A person commits an offense if, in violation of [an agreed protective order], the person knowingly or intentionally . . .
>> (3) goes to or near any of the following places as specifically described in the order . . . :
>>> (A) the residence or place of employment or business of a protected individual or a member of the family or household; or
>>> (B) any child care facility, residence, or school where a child protected by the order or condition of bond normally resides or attends[.]

TEX. PENAL CODE § 25.07(a)(3). The protective order prohibits Nnamdi from "going within 200 yards of Tavel's residence" and specifically identifies that address.

Even if the phrase "as specifically described in the order" modifies not only the places listed in subsections (A) and (B), but also any characterization of the description of "to or near" in the protective order itself, the charge is not affirmatively misleading. Black's Law Dictionary defines "near" as "close to; not far away, as a measure of distance." BLACK'S LAW DICTIONARY (11th ed. 2019). The Oxford English Dictionary defines "near" as "to, within, or at, a short distance; to, or in, close proximity." COMPACT OXFORD ENGLISH DICTIONARY 1152 (2d. ed. 1989). "Near," when used as part of the phrase "to or near," means "not far away" from or in "close proximity" to the residence specifically described in the protective order—in other words, within 200 yards. Here, the evidence showed that Nnamdi was both in close proximity to and within 200 yards of Tavel's residence—he was close enough to knock on the door and window of her home. Again, we doubt the jury would have misunderstood the task at hand.

**The state of the evidence including contested issues and the weight of the probative evidence.** Nnamdi's defense was that he did not have notice of the protective order. It is true that he did not sign the order, and the State did not present proof that it was served on him. But the order itself recites that he personally appeared at the hearing that resulted in the order and "reached an agreement" to its terms. The order contains a handwritten term providing, "[Nnamdi] denies all allegations listed in [Tavel]'s affidavit. [He] further denies allegations of family violence. [He] agrees to this protective order because it is in the best interest of the parties." Furthermore, Tavel and officers testified that he knew of the order—he was previously arrested for violating it, and then continued to violate it. Based on this testimony, the jury could have rationally concluded that Nnamdi knowingly or intentionally violated the agreed protective order.

Nnamdi acknowledges on appeal that "the testimony and the evidence allowed the jury to find some number of the allegations true," but again points to the lack of evidence of the December 19, 2019 violation. As discussed above, however, the evidence was sufficient to prove that violation. Also, the evidence supporting the allegations that Nnamdi came "to or near" Tavel's residence showed that he was actually "at" the residence. She testified:

- "He would knock on the door or my windows. There were times he would jump the fence and knock on my bedroom window." (June 10, 2019)

- "He came to my house. . . . It was a similar situation: Knocking on my door and knocking on my windows and I called the police." (September 3, 2019)

- "The 19th he came to my home knocking on the window, knocking on the door. I don't remember if that was the day he opened the door to my vehicle, that week of -- there was that week the 19th and there was another incident on the 21st of December where my vehicle the door was unlocked. He opened it he took my wireless earbuds." (December 19, 2019 and December 21, 2019)

- "He came to my house. . . That day he was knocking on the door." (January 8, 2020)

- "He came to my house again knocking on the door and windows." (January 17, 2020)

An officer testified that he responded to Tavel's report on December 31, 2019, where she "said he was there[.]" So for all seven of the "to or near" allegations, the evidence showed that Nnamdi traveled "to" the residence, and he never contested proximity at trial. *See Saenz v. State*, 479 S.W.3d 939, 953–54 (Tex. App.—San Antonio 2015, pet. ref'd) (concluding state of evidence weighed against finding of egregious harm).

**The arguments of counsel.** Nnamdi's argument focused on his defense that he lacked knowledge of the order. The State argued it had proved "that he violated that protective order that was issued by the 45th Judicial Court more than two times in a 12-month period." And the State explained to the jury that "you have to find that he violated two or more times in a 12-month period. You have 14 to choose from. You have to be unanimous only that he violated two times. You can pick whichever two you want." *See Olivas*, 202 S.W.3d at 148 (considering possible harm from missing instruction on State's burden and noting ameliorative effect of counsel's informing the jury of the burden).

**Any other relevant information revealed by the record of the trial as a whole.** Nnamdi points out that neither the trial court nor the parties were aware of the amendment to section 25.07 that he alleges applies to this case. He asserts that the first alleged violation would be governed by the 2017 version of the statute, and that the remaining allegations would be governed by the 2019 version. But none of the relevant statutory language was changed as a result of this amendment.

After reviewing the relevant factors, we conclude the record in this case does not support a finding of egregious harm from omissions in the jury charge. *See Olivas*, 202 S.W.3d at 144. The errors about which Nnamdi complains neither affected the very basis of the case, nor deprived him of a valuable right, nor vitally affected his defensive theory. *Marshall*, 479 S.W.3d at 843. Accordingly, we overrule Nnamdi's final issue.

## CONCLUSION

Having overruled Nnamdi's issues, we affirm the judgment of the trial court.


Beth Watkins, Justice

DO NOT PUBLISH