

# NUMBER 13-24-00600-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JERRY CARTER A/K/A**
**JERRY LEWIS CARTER JR.,**                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                **Appellee.**

---

## ON APPEAL FROM THE 396TH DISTRICT COURT
## OF TARRANT COUNTY, TEXAS

---

# MEMORANDUM OPINION

## Before Chief Justice Tijerina and Justices West and Fonseca
## Memorandum Opinion by Chief Justice Tijerina

A jury convicted appellant Jerry Carter a/k/a Jerry Lewis Carter Jr. of assault of a

family member with a prior conviction, a third-degree felony (count I),[1] and assault causing

---

[1] Carter does not challenge this count.

bodily injury to a family member by impeding normal breathing or circulation with a previous conviction, a second-degree felony (count II). *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A), (b-3). The trial court sentenced Carter to fifteen years' imprisonment for count I and thirty-five years for count II to be served concurrently. Carter argues the evidence "was legally insufficient to support [his] convictions for aggravated assault causing serious bodily injury and assault of a household or family member by impeding breath and/or circulation." We affirm.[2]

## I. BACKGROUND

At trial, Semika Lester testified that she began dating Carter in 2019. Their relationship consisted of frequent arguing, which led to many physical fights between them. Semika stated that their relationship was "toxic" because Carter would consume fifteen-packs to thirty-packs of beer. Semika also stated that Carter had poured beer on her, kicked her, "snatch[ed]" her hair out, thrown her into walls and onto the ground, punched holes in the wall, and thrown her through a glass entertainment center that had a TV on it. One assault caused Semika to be hospitalized. On another occasion, Carter began threatening her in his car. Semika ran out for help, tripped on the sidewalk, and while she was crouched over, Carter kicked her in her vagina, which caused Semika to develop a hematoma and lose her ability to walk properly. According to Semika, she had to carry a knife in her purse for protection from him. Nonetheless, Carter would often apologize, and each time Semika would forgive him.

Semika testified that on April 27, 2022, she was staying with Carter at his

---

[2] This appeal was transferred from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

grandmother's house. When she woke up, Carter was sitting at the end of the bed with her phone in his hand. Carter became upset because he discovered old texts from Semika to another male, and he began to punch her. Semika got up and moved to the closet. Carter then grabbed her phone cord charger and wrapped it around her neck, choking her. Semika testified that she could not breathe, such that she was "fighting for [her] life," and felt "[l]ike [she] was going to die," but she managed to break loose. Carter then pushed her to the bed, pinned her down with his knees, and "split [her] lower mandible," by striking her with his fists. Semika was unable to describe the pain she experienced because she said it was unbearable. Semika said she did not attempt to leave the room because Carter was still awake, so she held her "eyes up—open in pain, hoping and praying" that was the end of the assault.

Carter drove Semika to her mother's house the next morning. Semika dialed 9-1-1 and was transported to the hospital via ambulance. According to Semika, because Carter fractured her jaw, she underwent surgery to insert a metal plate in her chin. As a result of the metal plate, which she will have for the rest of her life, her "words are slurry," and she must repeat herself. The 9-1-1 call was admitted into evidence along with photos of Semika's injuries.

Fort Worth Police Department patrol officer Jessica Anne Morgan testified that on April 28, 2022, she met with Semika who "appeared to have been severely beaten" with "an obvious injury to the left side of her face." Officer Morgan stated that Semika had a lot of swelling, had a very difficult time speaking, and was very emotional about what happened. Semika appeared to have belabored speech, and Officer Morgan "remember[s] being taken aback by how severe" Semika's injuries were, "considering that

3

the call was a low priority call." Thus, Officer Morgan "did not expect to arrive to find somebody as severely injured as she was." According to Officer Morgan, Semika stated that Carter assaulted her, punched her in the face multiple times, and used the phone cord to strangle her. Semika informed Officer Morgan that she used her hands to come between the phone charger and her neck, and that is how she broke the cord.

The jury convicted Carter, and this appeal followed.

## II. LEGAL SUFFICIENCY

Carter argues the evidence is legally insufficient to support his conviction of count II.

### A. Standard of Review

We apply the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979) in determining whether the evidence is sufficient to support each element of a criminal offense that the state must prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In evaluating the legal sufficiency of the evidence, we defer to the factfinder's credibility and weight determinations. *Id.* at 894. "[W]e view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895). We consider both direct and circumstantial evidence in our analysis. *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009); *see Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial

evidence cases.") (internal quotation omitted). We must presume the finder of fact resolved any evidentiary conflicts in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326; *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that the reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally"). If there are two permissible views of the evidence, the factfinder's "choice between them cannot be clearly erroneous." *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Here, such a charge would instruct the jury that a person commits an assault when that person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1). An assault is enhanced to a second-degree felony if the person: (1) commits the offense by "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood" of a family member[3] "by applying pressure to the [family member's] throat or neck"; and (2) has previously been convicted of the same offense. *Id.* § 22.01(b-3).

A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably

---

[3] The enhanced offense level applies when the offense is committed "against a person whose relationship to or association with the defendant is described by [§] 71.0021(b), 71.003, or 71.005, Family Code." TEX. PENAL CODE ANN. § 22.01(b-3)(1). It is undisputed that Semika is such a person. *See* TEX. FAM. CODE ANN. § 71.0021(b) (defining "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature").

certain to cause the result. *Id.* § 6.03(b). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

## B.    Discussion

First, Carter argues the evidence was legally insufficient to support his conviction for "aggravated assault causing serious bodily injury." *See id.* § 22.02(a)(1) (listing the requirements for aggravated assault causing serious bodily injury). However, Carter was not convicted of aggravated assault causing serious bodily injury. Instead, the record provides that the jury convicted Carter of the lesser-included offense of assault, which does not require proof of serious bodily injury. *See id.* Therefore, we overrule his first issue in part.

Carter further argues that the evidence was legally insufficient to show he impeded Semika's breath and/or circulation because: (1) the phone cord that Semika said was used around her neck broke, and Semika was able to break free; and (2) Semika informed Officer Morgan that she did not lose consciousness or experience dizziness.

Regarding impediment, the Texas Court of Criminal Appeals held:

[A]ny hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow is per se a bodily injury and therefore sufficient to satisfy family-violence assault. This is an exceptionally low bar. It takes very little effort or force to slightly hinder another's breathing or circulation, and there is notably no injury or threat of injury requirement aside from the impediment, however minimal.

*Philmon v. State*, 609 S.W.3d 532, 537 (Tex. Crim. App. 2020). Although Officer Morgan did not see visible injuries on Semika's neck, she testified that it is "common to not see visible injuries" in strangulation cases. Regardless, the jury could have believed Semika's testimony that Carter choked her with a phone cord, impeding her breath, such that she

thought she was going to die. *See id.* A victim's testimony "that she was never entirely unable to breathe" is sufficient for a jury to find "that her normal breathing was hindered." *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016); *see also Babineaux v. State*, No. 02-21-00085-CR, 2023 WL 164089, at *2 (Tex. App.—Fort Worth Jan. 12, 2023, pet. ref'd) (mem. op., not designated for publication) ("A victim's testimony is sufficient, in and of itself, to provide sufficient evidence to support a conviction."); *Reed v. State*, No. 02-15-00173-CR, 2016 WL 4491518, at *3 (Tex. App.—Fort Worth Aug. 26, 2016, no pet.) (mem. op., not designated for publication) (finding the evidence legally sufficient where the victim vacillated in her testimony as to whether appellant had choked her).

Specifically, Semika testified that she "felt no air . . . [she] couldn't [sic] hardly breathe . . . [she was] going to fight for her life." The jury did not need to find that Semika actually stopped breathing or that she was unconscious. *See Marshall v. State*, 479 S.W.3d 840, 844, 845 (Tex. Crim. App. 2016) ("Shawne's testimony that she was never entirely unable to breathe does not foreclose the possibility that her normal breathing was hindered."). Rather, the jury only needed to find that Carter impeded Semika's breathing, "for any amount of time." *Philmon*, 609 S.W.3d at 537. Accordingly, the fact that Semika was eventually successful in breaking free from the chord wrapped around her neck has no bearing on the jury's finding that Carter impeded Semika's breathing. *See id.* ("[E]vidence of the complainant simply being unable to take deep breaths supported the defendant's conviction under § 22.01(b)(2)(B)"); *Marshall*, 479 S.W.3d at 845 ("An impediment to normal breathing does not necessarily prevent breathing altogether because an impediment is merely a hindrance or obstruction."); *see also Szarf v. State*,

7

No. 01-22-00530-CR, 2023 WL 5110997, at *8 (Tex. App.—Houston [1st Dist.] Aug. 10, 2023, no pet.) (mem. op., not designated for publication) ("[E]vidence that breathing or blood circulation was impeded is an exceptionally low bar because it takes very little effort or force to slightly hinder another's breathing or circulation.") (cleaned up).

From this evidence, the jury could reasonably infer that Carter impeded Semika's normal breathing. *See* TEX. PENAL CODE ANN. § 22.01(b-3)(1); *see also Marshall*, 479 S.W.3d at 845 (holding that evidence was sufficient to show impeded breath where complainant testified that defendant tried to smother her with a pillow, and she could not take deep breaths but did not lose consciousness and was never completely unable to breathe). Accordingly, we find that the jury had legally sufficient evidence before it to find Carter guilty of assault by impeding Semika's normal breathing as alleged in count II. We overrule Carter's first issue in its entirety.

## III.   CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
25th day of September, 2025.