**Affirmed and Memorandum and Concurring Opinions filed March 10, 2020.**



**In The**

# Fourteenth Court of Appeals

_____

**NO. 14-18-00339-CR**

_____

**JOHN ROBERT-JAMES KANE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 82739-CR**

## MEMORANDUM OPINION

Appellant John Robert-James Kane appeals his conviction for assault–family violence by impeding the normal breathing or circulation of the complainant. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B). In two issues appellant argues (1) the evidence was insufficient to support his conviction; and (2) the trial court erred in admitting hearsay testimony. Concluding that the evidence was sufficient to support appellant's conviction and appellant was not harmed by admission of hearsay evidence, if any, we affirm.

**BACKGROUND**

The complainant testified that appellant was her common-law husband and they had been together from January 2010 through September 2017. They have one son who was five years old at the time of the offense.

On the day of the offense the complainant was asleep in her bedroom when appellant awakened her and asked her to go into another room. The couple's son was sleeping in the same bed with the complainant. When the complainant refused to go into another room appellant began choking the complainant and showing her pornographic videos on his phone. Appellant thought the woman in the videos was the complainant. The complainant denied that she was the woman in the videos. The complainant testified that while appellant was choking her she could not breathe and thought appellant was going to kill her.

Appellant dragged the complainant by her hair into the kitchen. Appellant told the complainant to remove her pants and sit in a chair. When the complainant sat down appellant put two socks into her mouth and placed duct tape over her mouth. Appellant used an extension cord to tie the complainant's ankles to the chair. While the complainant was tied and gagged, appellant took a kitchen brush from the sink and used the kitchen brush to sexually assault the complainant. When the couple's son woke up appellant stopped.

Appellant went to check on their son and the complainant was able to free one of her ankles. The complainant was unable to free her other ankle before appellant came back into the room and tied her up again. Appellant gave the complainant paper and pen and forced her to write an "apology" to their son for being in the pornographic video. The complainant wrote, "That's not me. Listen to her voice. It's not me." The complainant suspected appellant was using methamphetamine at the time of the assault.

When the couple's son woke up a second time appellant again left to check on him. At that time the complainant freed one of her ankles, grabbed the chair, and ran out the back door with the chair still attached to her. While the complainant was in the front yard looking for a neighbor appellant followed her outside and pulled her down on the ground. By this time, it was early morning and the couple's son woke up and came outside. The complainant begged her son to get her car keys, which he did. The complainant was unable to leave because appellant grabbed the keys and put both the complainant and their son in the car and drove around to the backyard.

The complainant testified that appellant choked her twice; once when they were leaving the bedroom and a second time when he held his arm around her throat from behind. The complainant was unable to breathe normally during either of the two times appellant choked her.

Eventually appellant allowed the complainant to bathe and lie down. Later that afternoon appellant told the complainant he was taking her to Katy, Texas to take a polygraph test to determine whether the complainant was telling the truth about not being in the pornographic videos. The complainant testified that she had suggested the polygraph as a ruse to get appellant to take her out of the house. Appellant, the complainant, and their son drove in their truck to Katy. When they arrived at the polygraph location appellant wrote several questions on a piece of paper. The polygraph examiner had earlier told appellant that children could not be present during the polygraph exam. Appellant went inside the polygrapher's office alone and left the truck running with the complainant and their son still in the truck. The complainant immediately moved to the driver's seat and drove to the nearest hospital.

At the hospital the complainant called her mother to pick up the complainant's

3

son. The complainant tried to make a police report at the hospital but was told she needed to make the report in the county where the offense occurred, which was not where the hospital was located. When the complainant was discharged from the hospital, at 8:41 p.m., she drove directly to the Brazoria County Sheriff's Office. The complainant was unable to make a report at that time because the door to the substation was locked. The complainant then drove directly to her friend Stacy's house.

Stacy Sockwell, the complainant's friend, testified that the complainant came to her house between 10:30 and 11:00 on a Saturday night. When Sockwell answered the door, she noticed that the complainant was distressed. The complainant was crying and began explaining the events of the night before. Sockwell testified that the complainant told her the complainant and appellant had "been up basically all night long" fighting. The complainant told Sockwell that appellant choked her and pulled her hair. Sockwell took photographs of bruises she saw on the complainant. The complainant reported she was naked from the waist down and appellant tied her feet to a chair with an extension cord. The complainant also told Sockwell that appellant used a kitchen cleaner or a sponge-type cleaner to sexually assault her. The complainant explained to Sockwell that appellant thought the complainant was the actor in a pornographic video.

Sockwell described how the complainant was able to untie one of her legs when appellant went into the son's bedroom. After untying her leg, the complainant was able to run outside, around daybreak. In explaining how she escaped the complainant recounted the polygraph story to Sockwell.

Sockwell observed bruising on the complainant's body, arms, ankles, and thighs. Sockwell took photographs of the injuries and the complainant called the police from Sockwell's home.

4

Deputy Dustin Mark Burke responded to the 911 call. The complainant recounted the offense to Burke who took photographs of the complainant's injuries. Burke testified that the complainant's injuries were consistent with her account of the offense. The photographs, admitted into evidence without objection, showed bruising on several locations including marks on the complainant's neck that were consistent with choking.

Burke testified that the complainant was upset and emotional while describing the offense. The complainant told Burke that appellant awakened her and told her he needed to show her a video. When the complainant refused appellant grabbed her by the throat and choked her. When the complainant again refused appellant told her, "Get up. Come to this other room or I'm going to kill you. I'm going to gouge out your eyes." The complainant reported to Burke that appellant told her to remove her pants and tied her legs to a kitchen chair with an extension cord. While the complainant's legs were tied to the chair appellant inserted a dish sponge handle into her vagina.

Gary Hale, a private polygraph examiner, testified that appellant came to his office with a list of questions he wanted the complainant to answer. As Hale and appellant were reviewing the questions appellant's attention was diverted by the sounds of a vehicle. Appellant looked out of the window, uttered "a few cuss words," and told Hale that he needed to leave. Specifically, appellant stated, "I need to get back . . . before she does because I beat her up. And I need to get back because if I don't get back before she does, I'm going to be arrested." Appellant tore up the piece of paper and threw it in the garbage bin. Hale retrieved the pieces of paper and taped them back together.

Appellant was charged with assault of a family member or a person with whom he had a dating relationship by impeding normal breathing or circulation.

5

Appellant was further charged with sexual assault. The jury found appellant guilty of assault of a family member by impeding breathing and found him not guilty of sexual assault. Appellant appeals his assault conviction.

ANALYSIS

In two issues appellant argues (1) the evidence was insufficient to support his conviction for assault family violence by impeding breathing; and (2) the trial court erred in allowing Sockwell's hearsay testimony.

## I. Sufficient evidence supports the jury's verdict.

In reviewing the legal sufficiency of the evidence to support a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In our review, we consider all of the evidence in the record, whether admissible or inadmissible. *Price*, 502 S.W.3d at 281. The jury is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may choose to believe or disbelieve all or a portion of a witness's testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."); *Jackson v. State*, 495 S.W.3d 398, 405 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

A person commits the offense of assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's

6

spouse." Tex. Penal Code Ann. § 22.01(a)(1). The offense is considered a third-degree felony if the offense is committed against a family member or a person with whom the defendant has a dating relationship, as defined in sections 71.0021(b), 71.003, or 71.005 of the Family Code, and "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." Tex. Penal Code Ann. § 22.01(b)(2)(B). Appellant does not challenge the sufficiency of the evidence to support the finding that the complainant was a family member or a person with whom he had a dating relationship. Appellant challenges the sufficiency of the evidence to support the finding that he impeded the complainant's breathing.

The jury heard testimony that appellant used his hands to choke the complainant twice, once when he first pulled her out of the bedroom and another time while she was tied to the chair. The complainant also testified that appellant put socks in her mouth and placed duct tape over her mouth. The jury viewed photographs of the complainant taken the day after the offense, which depicted marks on the complainant's neck consistent with choking. The evidence is legally sufficient to support a finding that appellant impeded the normal breathing or circulation of blood of the complainant by applying pressure to her throat or neck. *See Marshall*, 479 S.W.3d at 845 (evidence legally sufficient where complainant testified appellant held pillow against her face and she was unable to take deep breaths when he did so).

On appeal appellant argues that the only evidence that tends to show appellant intentionally, knowingly, or recklessly impeded the complainant's normal breathing by choking her was the complainant's testimony. Appellant contends that the complainant's testimony was not credible because she did not report a sexual assault

7

at the hospital, failed to flee while en route to the polygraph examiner's office, and admitted she could breathe through her nose while her mouth was taped shut. These allegations either represent conflicts in the evidence or go to the weight and credibility of the evidence and are therefore within the province of the jury to consider and resolve. *See Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) ("[T]he evidence is not rendered insufficient simply because appellant presented a different version of the events."). We will not disturb the jury's decision resolving the conflicts or weighing the evidence. *Montgomery*, 369 S.W.3d at 192 (reviewing court must not usurp role of jury in assessing weight and credibility of witnesses).

Viewing the entirety of the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that appellant committed the offense of assault of a family member by impeding breath or circulation in violation of the penal code. *See Marshall*, 479 S.W.3d at 845. We overrule appellant's first issue.

## II.  Appellant was not harmed by the admission of Sockwell's testimony.

In his second issue appellant argues the trial court erred in admitting the hearsay testimony of Sockwell. Specifically, appellant argues the following testimony was inadmissible hearsay:

> Q. (By [the prosecutor]): What did [the complainant] tell you?
>
> A. She told me that the night before, they had been up basically all night long. Her and [appellant] were fighting.
>
> [Defense counsel]: Objection, hearsay.
>
> [Prosecutor]: Excited utterance exception.
>
> THE COURT: Do you have any response?
>
> [Defense counsel]: Utterance. It's the — not a dialogue, if that's what she's going into.
>
> THE COURT: Overruled. I will allow it.

8

Appellant argues this testimony was not admissible under the excited utterance exception to the hearsay rule because several hours had passed since the events described by the complainant.

After appellant's hearsay objection was overruled, Sockwell's testimony continued as follows:

Q. Again, tell me what [the complainant] told you.

A. She told me that basically the night before, [appellant] and her had been fighting. And at some point in the early morning — their son was sleeping with them — he choked her and pulled —

[Defense counsel]: Objection, Your Honor. Hearsay.

THE COURT: Overruled.

A. That's what she told me.

Q. (By [the prosecutor]) Please continue.

A. I don't know the reasons. I don't know what all they were fighting about. But there was — he had choked her. He pulled her hair. I know she had some bruising on her. I took photos of that. The son woke up a couple of times, is my understanding. Was upset. He took her into the dining room or the living room, kitchen area. He tied her up with an extension cord on her feet really tight. And she was naked from the waist down. And he — she told me that he took a kitchen cleaner or a sponge-type cleaner and sexually assaulted her with it.

She also said that he told her to write a letter to her son because he was showing her videos. Apparently he thinks that she was on some kind of sexual video —

[Defense counsel]: Objection. Talking about what he said.

THE COURT: Sustained.

Appellant did not object to Sockwell's recitation of the complainant's account of the offense, including the complainant's description of appellant choking her, tying her to the chair, and sexually assaulting her with the kitchen utensil. Appellant

9

objected to Sockwell's testimony about appellant's statements and the trial court sustained that objection.

To preserve error based on the erroneous admission of evidence, an appellant must make a timely and specific objection in the trial court. Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Additionally, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Appellant complains about the testimony that was admitted before his hearsay objections. But, because he failed to object to Sockwell's subsequent testimony, obtain a running objection, or get a ruling on his objection outside the jury's presence, appellant has preserved error only as to Sockwell's first statements that the complainant and appellant had been up all night fighting and appellant choked her. We need not decide whether it was error to admit this testimony, however, because any error was harmless.

The improper admission of hearsay testimony is nonconstitutional error that is harmless unless the error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.). An error is harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 927; *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Likewise, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v.*

*State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Any error in the admission of Sockwell's testimony about the complainant's recitation of the offense was harmless because the complainant and Officer Burke both testified to the events of the offense, and, in the case of the complainant, did so in greater detail. Sockwell's testimony was cumulative of evidence admitted elsewhere including the unobjected-to portion of her testimony. Therefore, appellant has not shown harm by the admission of Sockwell's testimony. *See Merrit*, 529 S.W.3d at 557 (holding error in admission of witness's hearsay testimony was harmless when similar testimony was developed and offered without objection from complainant and law enforcement officer).

On this record, we conclude that any error in the admission of Sockwell's objected-to testimony did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 921. We overrule appellant's second issue.

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.


/s/    Jerry Zimmerer
        Justice


Panel consists of Justices Wise, Zimmerer, and Spain (Spain, J. concurring).

Do Not Publish — Tex. R. App. P. 47.2(b).

11