**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00285-CR**
_____

**JOSEPH GENE FREELAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-10-12680-CR**
_____

**MEMORANDUM OPINION**

A grand jury indicted Joseph Gene Freeland (Freeland or Appellant) for the third-degree felony offense of bail jumping and failure to appear. *See* Tex. Penal Code Ann. § 38.10(a), (f). The State filed a motion of its intent to present two enhancement paragraphs at the punishment phase alleging two prior felony convictions. Freeland pleaded not guilty, a jury found Freeland guilty of the offense, and Freeland elected for the trial court to assess punishment. After hearing additional

1

evidence, the trial court found both enhancement paragraphs to be true and assessed Freeland's punishment at twenty-five years of imprisonment. We affirm.

Background and Evidence at Trial

Susan Mitchell, Court Administrator for the 359th District Court, testified that court records indicated Freeland was arrested in October 2016 for possession of a controlled substance. According to exhibits admitted at trial and the testimony of Wendy Gardner, Court Liaison Officer for the District Court in 2016, Freeland was released on bond, and it was ordered as a condition of his release that he was to immediately report to the Montgomery County Probation Department. Gardner testified that Freeland did not report the following day as required. According to Gardner, after Freeland did not report, the probation department made several attempts to contact him by sending letters and making phone calls, and they also contacted his relatives and friends, but all efforts to contact him were unsuccessful.

Court Administrator Mitchell testified that at a court setting on December 14, 2016, Freeland signed a notice of his required appearance on January 17, 2017, in the 359th District Court, and the Hearing Order setting the case for January 17, 2017, signed by Freeland, was admitted into evidence. When he left the court on December 14, 2016, Freeland failed to report to the probation department, which was a

2

condition of his release. On December 28, 2016, the trial judge signed an order setting aside Freeland's bond, and the order was admitted into evidence.

On January 17, 2017, Freeland did not appear in court as required and did not contact the probation department or court staff to explain his absence. The bailiff for the 359th District Court signed a certificate for bond forfeiture, and a capias was issued for Freeland's arrest.

Freeland was arrested on the capias and issued a new bond. Court Administrator Mitchell testified that Freeland appeared in court on June 29, 2017, and Freeland was told that he must appear in court at the next setting on July 26, 2017. According to trial witnesses, Freeman did not appear on July 26th, and he did not contact the probation department or the court to explain his absence. The bailiff signed a certificate for Freeland's bond forfeiture, and a capias was issued for Freeland's arrest.

Constable Trevor Potter with the Montgomery County Precinct 4 Constable's Office testified that he was patrolling on August 21, 2017. Constable Potter testified that he observed a motorcycle traveling in the opposite direction without a headlight, which is a violation of the Texas Transportation Code. According to Constable Potter, when he passed the motorcycle driven by Freeland, Freeland turned his head to watch Potter pass, which Potter said in his experience indicated the driver was

3

"going to ditch something or run." Constable Potter turned his vehicle around and initiated a traffic stop based on the traffic violation. Potter testified that he exited his patrol car and instructed Freeland, who was wearing a "face mask" bandana over his face, to turn the motorcycle off and put it on the kickstand. According to Constable Potter, Freeland had difficulty getting off the motorcycle. Potter testified that he asked Freeland for his driver's license, Freeland said he did not have one, which based on Potter's experience either indicated that he had lost it or was trying to conceal his identity, and Potter asked Freeland his name. Constable Potter testified that when Freeland told him his name and took the mask off his face, he recognized Freeland and knew, based on his prior arrest of Freeland in October 2016 for possession of a controlled substance, that Freeland had a warrant out for his arrest. According to Constable Potter, he asked Freeland to turn around and put his hands behind his back so Potter could handcuff him while he confirmed the warrant, but Freeland started walking away from Potter's patrol car and began "digging in his waistband[.]" Constable Potter testified that he believed Freeland could be pulling out a weapon, so Potter pulled his Taser and deployed it when Freeland walked back in front of Potter's patrol car. According to Potter, the Taser was not effective, and Freeland ran the other way. Potter testified that when he caught up with Freeland and Freeland "came back towards [him]," Potter struck Freeland once with Potter's

4

baton. Potter testified Freeland again ran away and ignored Potter's commands to comply. When he told Freeland that if he stopped running Potter would not charge him with evading, Freeland stopped and threw a glass pipe. Potter noticed a "large fix[ed]-blade hunting knife" in the netted vest Freeland was wearing, and Potter pulled his gun and ordered Freeland to get on the ground. Once on the ground, Freeland stopped moving and Potter held him at gunpoint until backup arrived. Constable Potter testified that after he arrested Freeland, he transported him to Precinct 4 for booking.

Trina Freeland, Joseph Freeland's sister, testified that in 2017 Joseph was living 23.9 miles from the courthouse "basically camping" on her uncle's property in a "makeshift FEMA trailer" with a tarp on the side that was "falling apart that Joseph was trying to work on." Trina testified that there was no running water or electricity on the property, Joseph cooked his meals "on the campfire [and] that he made a makeshift stove outside[,]" and she would bring him food. Trina testified that Joseph was unemployed, had no reliable transportation in 2017, and had no nearby neighbors.

Trina, a truck driver, testified that on July 17, 2017, as she was leaving town for work, she and Joseph discussed whether she could come back from work in time to take him to his court setting on July 26, 2017. According to Trina, Joseph was

5

concerned about being able to get to his court hearing on July 26, 2017, and she assured him she would be able to take him to court on July 26, 2017. Trina testified that while she was out of town she was "stuck [waiting] because of permits" and that about three days prior to the court date she realized that she might not be able to be back in time to take Joseph to court as she had promised. Trina said she tried to reach Joseph on all his numbers, but she was unable to leave a message or contact him. Trina testified that Joseph called her on July 26, 2017, when her phone "had one percent battery[,]" and he wanted to know where she was, and he was "flustered" and "upset with [her] because [she] was out-of-state[,]" and then Trina's phone "went dead." She testified she returned home the second week of August for about three days and could not find Joseph because her uncle had sold the property and Joseph was no longer staying on her uncle's property.

The State's proposed jury charge included the following instruction in paragraph 5:

> It is a defense to the offense of Bail Jumping and Failure to Appear that the Defendant had a reasonable excuse for his failure to appear in accordance with terms of his release. An excuse is a reason that justifies an act or omission or that relieves a person of a duty. A reasonable excuse must encompass the entire time the defendant was absent from the court, i.e., from the time his name was called in the courtroom to the time he was ultimately apprehended or appeared in court.

6

Freeland objected to the statement that says that reasonable excuse must "encompass the entire time the defendant was absent from the court." Freeland argued the statement is not supported by caselaw, and that the statute, published case law, and pattern jury charges do not substantiate the statement and that neither legislative intent nor published case law support the contention that the offense of bail jumping and failure to appear is a continuing offense. Freeland argued that *State v. Ojiaku*, 424 S.W.3d 633 (Tex. App.—Dallas 2013, pet. ref'd) found that bail jumping is not a continuing offense. The State responded and argued that the definition used by the Thirteenth Court of Appeals in *Perkinson* was correct, and the *Perkinson* court agreed with the same definition of "reasonable excuse" as approved in *Kombudo v. State*, 148 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2004), *vacated on other grounds*, 171 S.W.3d 888 (Tex. Crim. App. 2005). *See Perkinson v. State*, No. 13-12-00274-CR, 2013 Tex. App. LEXIS 9948, at *7 (Tex. App.—Corpus Christi-Edinburg, Aug. 8, 2013, no pet.) (mem. op., not designated for publication). In *Kombudo*, the Fourteenth Court of Appeals stated the following:

> We do not construe [section 38.10(c)] to mean that appellant need only have a "reasonable excuse" at the precise moment his name was called in the trial court. Rather, we find that a "reasonable excuse" must encompass the entire time appellant was absent from the court, *i.e.*, from the time his name was called in the courtroom to the time he was ultimately apprehended or appeared in court.

148 S.W.3d at 550.

7

The trial court overruled the objection. The jury found Freeland guilty. The trial court heard additional evidence, found both enhancement paragraphs to be true, and assessed Freeland's punishment at twenty-five years of imprisonment. Freeland timely appealed.

## Appellate Issues

In two appellate issues, Freeland complains about the jury charge. In his first issue, he argues that the trial court erred by instructing the jury that in a Texas bail bond jumping and failure to appear case the "reasonable excuse defense" must encompass the entire time the defendant was absent from court. In his second issue, he argues the trial court erred by instructing the jury that bail bond jumping and failure to appear is a continuing offense.

## Standard of Review and Applicable Law

Appellate review of a purported jury charge error involves a two-step process. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011). First, we must determine whether error exists, and second, we must determine whether sufficient harm resulted from the error to warrant reversal. *See Barron*, 353 S.W.3d at 883 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If no error occurred, our analysis ends.

8

*See Kirsch*, 357 S.W.3d at 649. Whether the error was preserved in the trial court determines the degree of harm required for reversal on appeal. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171). If error was preserved by objection at trial, to obtain a reversal it requires a showing of "'some harm[.]'" *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (quoting *Almanza*, 686 S.W.2d at 171). If the error was not preserved by objection at trial, to obtain a reversal it requires proof of fundamental harm that was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal*, 453 S.W.3d at 433.

In assessing the degree of harm, we must consider the entire jury charge, the evidence, the argument of counsel, and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We examine the charge in its entirety rather than a series of isolated statements. *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Iniguez v. State*, 835 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). "[E]gregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (internal quotations omitted). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the

defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* at 490.

Section 38.10(a) provides that "[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear commits [the offense of bail jumping and failure to appear] if he intentionally or knowingly fails to appear in accordance with the terms of his release." Tex. Penal Code Ann. § 38.10(a). Subsection (c) states that "[i]t is a defense to prosecution under this section that the actor had a reasonable excuse for his failure to appear in accordance with the terms of his release." *Id.* § 38.10(c). Section 38.10 does not define "reasonable excuse[.]" *See id.*

Analysis

In his first issue, Freeland argues that the trial court erred by instructing the jury that in a Texas bail bond jumping and failure to appear case the "reasonable excuse defense" must encompass the entire time the defendant was absent from court. According to Freeland, the instruction "was not 'applicable law,' 'constituted a comment on the weight of the evidence,' 'shifted the burden of proof to the defendant' and 'permitted the State to use extraneous offenses to convict the Appellant.'" The only one of these objections articulated by Freeland at trial was that the instruction did not comport with applicable law.

10

In his second issue, Freeland argues the trial court erred by instructing the jury that a bail bond jumping and failure to appear case in Texas is a continuing offense. Freeland argued at trial that bail jumping is not a continuing offense. On appeal Freeland makes a different argument. He contends that by including the instruction that a "reasonable excuse" must encompass the entire time the defendant was absent from court, the trial court was declaring bail jumping to be a continuing offense. He argues the definition of "reasonable excuse" included in the jury charge "result[ed] in a judicial declaration that the offense of bond jumping [and] failure to appear is a continuing offense under Texas law." Freeland also contends on appeal that when the legislature enacted section 38.10 it provided no guidance as to the definition of "reasonable excuse." According to Freeland, the definition of "reasonable excuse" in the charge informed the jury that bond jumping and failure to appear was a continuing offense and that is "contrary to established Texas law[.]" Freeland cites to *State v. Ojiaku* in support of his arguments, as he did in the trial court. *See* 424 S.W.3d 633.

In response to Freeland's two issues, the State again cites to *Perkinson v. State* and *Kombudo v. State*. *See* 2013 Tex. App. LEXIS 9948; 148 S.W.3d 547. The State contends that the "reasonable excuse" instruction was not erroneous because it did not violate article 36.14. Also, the State argues that *Ojiaku* is distinguishable because

11

it is a statute of limitations case, Freeland's objections at trial do not comport with those made on appeal, the instruction did not improperly shift the burden of proof or permit extraneous offense testimony, and that any error in including the challenged instruction was harmless. *See* 424 S.W.3d 633.

The trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. Ann. art. 36.14. Generally, if a jury charge instruction "is not derived from the [Texas Penal] [C]ode, it is not 'applicable law[]'" under section 36.14 of the Texas Code of Criminal Procedure. *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007).

> [N]either the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence.

*See id.* at 212.

In *Perkinson*, the Thirteenth Court of Appeals concluded that, because section 38.10(c) is silent regarding the time period during which a defendant must have a

12

"reasonable excuse" for purposes of the defense, the trial court's instruction "simply incorporate[d] existing case law, as stated in *Kombudo*, into an instruction regarding the 'reasonable excuse' defense[,]" and the instruction did not constitute a comment on the weight of the evidence because it "d[id] not focus the jury's attention on any specific type of evidence[.]" 2013 Tex. App. LEXIS 9948, at *7. The court also noted that *Walters* does not prohibit all non-statutory instructions from inclusion in a charge, it "only forbids those non-statutory instructions which constitute a comment on the weight of the evidence." *See id.* at *9 n.3 (citing *Walters*, 247 S.W.3d at 212-14).

The instruction challenged in *Perkinson* is the same instruction being challenged by Freeland. *See id.* at **2-3. We agree with *Perkinson* and conclude that the instruction was not an improper comment on the weight of the evidence, nor was it an incorrect statement of the applicable law. *See also generally Fininen v. State*, No. 06-16-00039-CR, 2016 Tex. App. LEXIS 11595, at **6-7 n.4 (Tex. App.—Texarkana Oct. 27, 2016, no pet.) (mem. op., not designated for publication) (the trial court used the same instruction for "reasonable excuse" in bail jumping and failure to appear case, but the charge was not challenged on appeal); *Atchley v. State*, No. 06-15-00215-CR, 2016 Tex. App. LEXIS 12540, at **18-19 (Tex. App.—

13

Texarkana Nov. 23, 2016, pet. ref'd) (mem. op., not designated for publication) (same).

Freeland relies heavily on *Ojiaku*, a Fifth Court of Appeals opinion, to support his argument that the "reasonable excuse" instruction erroneously informed the jury that bail jumping and failure to appear was a "continuing offense." The undisputed facts in *Ojiaku* were as follows:

> [Ojiaku] was indicted in 2003 for indecency with a child. [Ojiaku] was admitted to bail and ordered to appear in the trial court on September 26, 2003. [Ojiaku] failed to appear and was not apprehended until November 3, 2012. On February 22, 2013, the State indicted [Ojiaku] for bail jumping and failure to appear ("bail jumping" hereinafter). The face of the indictment indicates the offense occurred between September 26, 2003, and November 3, 2012. The indecency offense was dismissed on February 27, 2013.
>
> [Ojiaku] filed a pretrial application for writ of habeas corpus contending the applicable three-year statute of limitations had run on the bail jumping case. During the hearing on the writ application, the State contended limitations had not expired because [Ojiaku]'s failure to appear constituted a continuous offense occurring from September 26, 2003, through November 3, 2012, and, thus, the indictment was timely. The trial court granted [Ojiaku]'s writ application and signed an order dismissing the case with prejudice. The trial court subsequently filed findings of fact and conclusions of law. The trial court concluded that the offense of bail jumping is complete when the defendant fails to appear in accordance with the terms of his release, bail jumping is not a continuous offense, and the statute of limitations is three years. The trial court concluded prosecution of the bail jumping case is barred by the statute of limitations because no indictment was filed within three years of when [Ojiaku] first failed to appear, and thus limitations expired prior to the presentation of the indictment. The trial court entered a final order dismissing the prosecution with prejudice.

14

424 S.W.3d at 634-35. The State appealed the trial court's order granting Ojiaku's pretrial application for writ of habeas corpus and dismissing the case with prejudice. *Id.* at 634. In one of its appellate issues, the State argued the trial court erred in granting relief on Ojiaku's writ application and dismissing the prosecution with prejudice because bail jumping constitutes a continuing offense and therefore limitations had not expired. *Id.* at 636. According to the State, Ojiaku, having failed to appear in the trial court as ordered in 2003, continued committing the offense every day he failed to appear in the trial court until he was apprehended. *See id.* The State relied in part on *Kombudo* wherein the Fourteenth Court of Appeals concluded that a defendant has a continuing duty to appear in court after missing a trial date. *Id.* at 636-37. The State conceded (1) that section 38.10(a) does not expressly state the offense should be continuing in nature and (2) that no Texas authority has determined bail jumping is a continuous offense for purpose of limitations. *Id.* at 636.

We find *Ojiaku* distinguishable from this case. *Ojiaku* was a statute of limitations case and did not address whether the instruction on "reasonable excuse" was proper in a bail jumping case. In fact, the *Ojiaku* court recognized this distinction when discussing *Kombudo*.

> [In *Kombudo*,] [t]he defendant was charged with bail jumping upon his arrest several months later. The court of appeals concluded the fact the

15

defendant had a reasonable excuse for not appearing on the scheduled date was not a defense to the bail jumping charge because he had a continuing obligation to report even after his bond was forfeited. Limitations was never at issue in *Kombudo*; rather, the issue was whether the defendant had committed the offense.

*Id.* at 638 (internal citations omitted). Here, as in *Kombudo*, the issue was whether Freeland committed the offense.

We reject Freeland's argument that the definition of "reasonable excuse" included in the charge declared to or informed the jury that bail jumping and failure to appear was a "continuing offense." The instruction did not inform the jury that the offense of bail jumping and failure to appear is a continuing offense. Instead, it instructed the jury that the "reasonable excuse" must encompass the entire time appellant was absent from the court. *See Kombudo*, 148 S.W.3d at 550. The trial court did not err in including the State's proposed "reasonable excuse" instruction in the jury charge and did not violate article 36.14 of the Texas Code of Criminal Procedure.

We also reject Freeland's argument that the charge shifted the burden of proof. The court's charge to the jury expressly provided that the State had the burden of proof. The charge provides: "The burden of proof in all criminal cases rests upon the State throughout trial and never shifts to the Defendant." When the whole charge is read, we believe the jury was clearly informed that the State bore the burden of proof

16

and the complained-of instruction did not shift the burden of proof to the defendant. Similarly, we fail to see how the complained-of instruction permitted the State to introduce extraneous offenses. The Appellant offers no supporting authority for this specific claim and does not identify a connection between the instruction and the admission of evidence during trial. *See* Tex. R. App. P. 38.1(i).

That said, even assuming the trial court erred in including the complained-of instruction, we must determine whether the error was harmful. As stated earlier, the appropriate standard of review for harmless error depends on whether the defendant timely objected to the jury instructions. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Almanza*, 686 S.W.2d at 171. If the defendant timely objected, reversal is required if the error caused "some harm" to the defendant. *Marshall*, 479 S.W.3d at 843. Absent a timely objection, reversal is required "only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial." *Id.* Under both the egregious harm standard and the "some harm" standard, in order for a reviewing court to reverse it must still find that the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

17

A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits the offense of bail jumping and failure to appear if he intentionally or knowingly fails to appear in accordance with the terms of his release. Tex. Penal Code Ann. § 38.10(a). It is a defense to prosecution that the actor had a reasonable excuse for his failure to appear in accordance with the terms of his release. *Id.* § 38.10(c). But the issue of the existence of a defense is not submitted to the jury unless some evidence is admitted that supports the defense. *See id.* § 2.03(c).

Based on a review of the charge as a whole, the arguments of counsel, the entirety of the evidence, and all other parts of the record, we conclude that the record does not show that Freeland suffered some harm from the complained-of instruction. The only evidence of a reasonable excuse that appears in the record relates to Freeland's failure to appear at the court setting on July 26, 2017. Freeland's sister testified that Freeland had prearranged for her to take him to court, but she was out of town and could not get back in time to take him to court. The undisputed evidence at trial showed that Appellant had also failed to appear in accordance with the terms of his release on other occasions. The jury heard the evidence and could have chosen to disbelieve the testimony from Freeland's sister, or could have concluded that Freeland lacked a reasonable excuse for failing to appear, as it was the judge of the

18

credibility of the witnesses and as it weighed all of the evidence. On this record, we cannot say the instruction defining "reasonable excuse" caused any actual harm to Appellant.[1]

We overrule Freeland's two appellate issues and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 6, 2020
Opinion Delivered April 29, 2020
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[1] Because the record does not demonstrate that Appellant suffered "some harm" from the complained-of instruction, which is a less-stringent degree of harm than "egregious harm," we need not examine whether he suffered "egregious harm."