

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00253-CR

**MICHAEL GUADRON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 443rd District Court
### Ellis County, Texas
### Trial Court No. 46623CR

## MEMORANDUM OPINION

In two issues, appellant, Michael Guadron, challenges his conviction for continuous family violence for which he received a prison sentence of eight years and six months. *See* TEX. PENAL CODE ANN. § 25.11(a), (e). Specifically, Guadron contends that the evidence is insufficient to support his conviction and that the judgment should be reformed to reflect the proper statute for the offense. We affirm as modified.

**Sufficiency of the Evidence**

In his first issue, Guadron argues that the evidence is insufficient to support his conviction for continuous family violence. We disagree.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey*

*v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

APPLICABLE LAW

Under the Texas Penal Code, a person commits continuous violence against the family "if, during a period that is [twelve] months or less in duration, the person two or more times engages in conduct that constitutes an offense under [section] 22.01(a)(1) [of the Texas Penal Code] against another person or persons whose relationship to or association with the defendant" is defined by various sections of the Texas Family Code. TEX. PENAL CODE ANN. § 25.11(a). A person commits assault under section 22.01(a)(1) of the Texas Penal Code if that person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *Id.* § 22.01(a)(1). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). The offense of continuous family violence requires the defendant to be in a specific

relationship to the other person; specifically, they must be in a dating relationship, a family member, or a member of the household. *See id.* § 25.11(a); *see also* TEX. FAM. CODE ANN. § 71.0021(b) (defining a "dating relationship").

DISCUSSION

Detective Jill Turner of the Waxahachie Police Department testified that the victim in this case, Andria Hyland, reported multiple instances of domestic violence perpetrated by her boyfriend, Guadron, within a twelve-month period—between July 6, 2020, and September 2, 2020. In her testimony, Hyland described numerous instances of domestic violence between July 6, 2020, and September 2, 2020, as well as an additional instance of domestic violence dating back to March 2020. Specifically, in March 2020, Guadron pushed Hyland down to the ground while they were living at Hyland's mother's house. Hyland hurt her buttocks as a result of the fall. Later, in July 2020, Hyland and Guadron moved into an apartment together in Waxahachie, Texas. Hyland recounted that in mid-July 2020, Guadron grabbed her arm and swung her around, causing her to fall onto the ground and hurt her back. Later that month, after she had left the hospital following treatment for a miscarriage, Hyland saw Guadron at a RaceTrac gas station and inquired why he was not with her. Guadron responded by pushing Hyland to the ground, causing her to hurt her buttocks and scrape her elbow.

At the end of July 2020, Hyland prepared to go home to celebrate her birthday, which angered Guadron. He broke the apartment door in response. Upset with "what

was going on," Hyland took a steak knife and threatened the kill herself. Guadron took the steak knife from Hyland, hit Hyland in the face with it, and dragged Hyland by her ankle back inside the apartment, causing her to repeatedly hit her head on the ground. Hyland recalled that Guadron then started throwing the contents of the apartment at her. Guadron broke Hyland's computer, ripped apart her textbooks, smashed her cell phone on the ground, and slashed her birthday balloons. Guadron was arrested after this incident.

After being released from custody, Guadron accused Hyland of flirting with a man on social media. Angered, Guadron pulled Hyland into the closet by her hair and slammed her head on the ground multiple times. While she was on the ground, Guadron threatened to "stomp [her] out," or step on her head.

At the end of August 2020, Guadron was driving and got angry with Hyland. He ordered her to exit the vehicle, and when she did not exit quickly enough, he grabbed her arm, pulled her out of the vehicle, and pushed her over the hood and onto the ground, which caused bruising on Hyland's buttocks. Eventually, Guadron let Hyland back in the vehicle, but shortly thereafter, he pulled over again in a parking lot and pulled her out of the vehicle. This time, he dragged her on the gravel, causing a large abrasion on her right thigh. While Hyland covered her head, Guadron stomped on her stomach three times. He then dragged her back into the vehicle, drove her to the hospital, and taunted

her to go in and tell everyone what he had done. As Hyland attempted to exit the vehicle, Guadron called her a "trifling ass bitch" and drove off with her still inside the vehicle.

The next incident of domestic violence described by Hyland occurred on September 2, 2020. In this instance, Guadron got angry with Hyland and choked her, dragged her off the bed, and hit her in the face with his fists and keys.[1] After this incident, Hyland decided she had to leave Guadron. That night, Hyland and a friend attempted to get Guadron to leave the apartment. He eventually agreed, but before he left, he "tore up" the apartment, breaking Hyland's mirror and television and knocking over her dresser.

Hyland and Guadron got back together a few weeks later because Guadron left voicemails saying he was sorry and that he loved her. Believing he had changed, Hyland filed an affidavit of non-prosecution. Although she wanted all charges dropped, she did not deny that the instances of domestic violence occurred. Hyland and Guadron continued their relationship until March or April 2022.

The State also presented testimony from law enforcement who responded to the numerous domestic calls made by Hyland. These officers recounted the reports made by Hyland and corroborated her testimony about the injuries sustained as a result of the incidents. Moreover, Hyland's mother, Kelly Green, described seeing blood on Hyland's leg, bruises over Hyland's eye, "whelps" on the back of Hyland's head, and other bruises

---

[1] The jury acquitted Guadron of assault by occlusion.

and marks on Hyland's legs, wrists, and neck, after Hyland had arguments with Guadron. In addition, Hyland's friend, Joseph Villarreal testified that he observed cuts, bruises, and scrapes on Hyland's arms, legs, and eye after Hyland had arguments with Guadron. Furthermore, the record includes pictures documenting Hyland's numerous bruises, cuts, and abrasions that Hyland noted were the result of the instances of domestic violence perpetrated by Guadron.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have determined that Guadron and Hyland were in a dating relationship and that Guadron assaulted Hyland two or more times during a period that was twelve months or less in duration. *See* TEX. PENAL CODE ANN. § 25.11(a); TEX. FAM. CODE ANN. § 71.0021(b); *see also Zuniga*, 551 S.W.3d at 732-33.

Despite the foregoing, Guadron directs us to evidence that Hyland suffered from depression and wanted to kill herself; that his mothers, Reyna Escobar and Julie Gonzales, never saw Guadron hit or yell at Hyland; and that Hyland was found guilty of Class C assault arising from an argument where Hyland hit Guadron in October 2020, to show that the evidence is insufficient to support his conviction.[2] We note that jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App.

---

[2] It is noteworthy that Julie Gonzales called the police on Guadron after an argument about him taking Gonzales's truck resulted in Guadron grabbing Gonzales's shirt and "accidentally" backhanding Reyna Escobar in the mouth.

Guadron v. State

2012); *see also Green v. State*, 607 S.W.3d 147, 152 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The jury may choose to believe or disbelieve all or part of a witness's testimony, and, to the extent conflicts in the evidence exist, we presume the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."); *see also Green*, 607 S.W.3d at 152. Accordingly, we hold that the evidence is sufficient to support Guadron's conviction for continuous family violence under section 25.11 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 25.11(a); *see also Zuniga*, 551 S.W.3d at 732-33. We overrule Guadron's first issue.

## Reformation of the Judgment

In his second issue, Guadron asserts that the judgment of conviction should be reformed to reflect the proper statutory provision for the offense. The State agrees.

The judgment of conviction states that the statute for the offense is section 25.11(e) of the Texas Penal Code. Section 25.11(e) provides that the punishment for an offense under section 25.11 is a third-degree felony, whereas section 25.11(a) outlines the elements for the offense of continuous family violence. *See* TEX. PENAL CODE ANN. § 25.11(a), (e). We therefore modify the judgment of conviction to reflect that the statute for the offense is section 25.11(a). *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("An appellate court has the power the correct and reform a trial court

judgment 'to make the record speak the truth when it has the necessary data to do so, or make any appropriate order as the law and nature of the case may require.'" (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd))). Accordingly, we sustain Guadron's second issue.

## Conclusion

Having sustained Guadron's second issue, we modify the judgment of conviction to reflect that the statute for the offense is section 25.11(a) of the Texas Penal Code. We affirm the judgment of conviction as modified.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Justice Smith
Affirmed as modified
Opinion delivered and filed May 10, 2023
Do not publish
[CR25]

