**Opinion issued June 26, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00466-CR

———————————

**JORDAN ISAIAH LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Case No. 1598391

## MEMORANDUM OPINION

Jordan Isaiah Lopez appeals his conviction for murder, for which he was sentenced to 35 years' imprisonment. *See* TEX. PENAL CODE § 19.02. On appeal, he argues that the jury charge erroneously included a failure-to-retreat instruction as part of the instructions on his self-defense claim. He asserts that he is entitled to a

new trial because he suffered egregious harm on account of the erroneous charge. He also argues that he was egregiously harmed when the trial court did not respond substantively to the jury's questions during deliberations. We affirm.

## Background

On July 5, 2018, Lopez shot and killed Austin Balogun in Balogun's apartment. Lopez confessed to the killing two weeks later. He was charged with capital murder and proceeded to a jury trial. At trial, he argued that the jury should acquit him of capital murder because he acted in self-defense. Among others, the jury heard testimony from Lopez's friend, Jose Vazquez, Lopez's brother, Balogun's mother, and law enforcement who participated in the investigation. The jury found Lopez guilty of the lesser-included charge of murder.

## Failure-to-Retreat Instruction

On appeal, Lopez argues that the trial court had no basis for instructing the jury on failure to retreat, a subsidiary point of law relevant to the law of self-defense. He argues that including the instruction confused the jury so much so that it vitiated his self-defense claim. The State responds that the failure-to-retreat instruction was law applicable to the case and therefore appropriately included in the court's charge. The State argues that the jury's questions, which Lopez relies on to infer confusion, do not rebut the presumption that the jury followed the court's charge. Both parties agree that Lopez did not preserve his complaint by objecting in the trial court.

2

Therefore, to garner a new trial, Lopez must prove that he was egregiously harmed by the allegedly erroneous charge.

## A. Standard of Review

When reviewing a challenge to a jury charge, we first consider whether error occurred, and if so, whether sufficient harm occurred to justify reversal. *Yepez v. State*, 696 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)). When, as here, the defendant did not properly object, the charge error is not preserved, and we reverse only if the error resulted in "egregious" harm. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

"Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Neither party bears the burden to show harm or lack thereof. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Reeves*, 420 S.W.3d at 816. Rather, the appellate court must examine the relevant portions of the entire record to determine whether an appellant suffered actual rather than theoretical harm based on the charge error. *Marshall*, 479 S.W.3d at 843.[1]

---

[1] The appellant maintains the obligation to brief the issue for the court. *See* TEX. R. APP. P. 38.1(i).

The trial court has the responsibility to give the jury "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. art. 36.14. The charge informs the jury of the applicable law and guides them in how to apply the law to the facts. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Alcoser v. State*, 596 S.W.3d 320, 322 (Tex. App.—Amarillo 2019) (stating that "a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case"), *rev'd and remanded on other grounds*, 663 S.W.3d 160 (Tex. Crim. App. 2022).

**B.    Law of Self-Defense**

Section 9.31 and 9.32 of the Texas Penal Code outline the elements of self-defense. TEX. PENAL CODE §§ 9.31 (non-deadly force self-defense), 9.32 (deadly force in self-defense). Section 9.31(a) states that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Section 9.32(a) states:

A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31; and

4

> (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>
>> (A) to protect the actor against the other's use or attempted use of unlawful deadly force.

TEX. PENAL CODE § 9.32(a).[2]

The statute explains the circumstances under which an actor does not have a duty to retreat. It provides:

> (c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described in this section.
>
> (d) For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

TEX. PENAL CODE § 9.32 (c–d).

## C.    Relevant Jury Charge Excerpts

As far as self-defense, the jury was instructed:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of

---

[2]    The remainder of subsection (a)(2) states deadly force can be justified if an actor reasonably believes it is immediately necessary "to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE § 9.32(a)(2)(B). In this case, the trial court used only (a)(2)(A) in the instruction as a basis for using deadly force.

force against another is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force. You are not to consider whether the defendant failed to retreat.

The charge continued its self-defense instruction by defining terms, including "reasonable belief" and "deadly force." The charge concluded with specific application of the law to the facts.

## D.    Analysis

Lopez argues that the trial court erred in instructing the jury on the third paragraph of the self-defense instruction. Specifically, Lopez complains only of the first sentence of that paragraph, which lists the conditions under which an individual need not retreat before using deadly force. *See* TEX. PENAL CODE § 9.32(c) (listing conditions when individual does not have duty to retreat). Lopez argues that this instruction was not law applicable to the case because Section 9.32(c) was inapplicable to him. He argues that because he conceded he was engaged in criminal

activity at the time the deadly force was used, the jury did not need to evaluate whether he had to retreat before using deadly force. [3]

The State responds that the determination of law applicable to the case does not hinge on whether that law was beneficial to Lopez's self-defense claim. The State further argues that it had a legitimate interest in informing the jury of the relevant statutory law on the failure to retreat so that it could argue to the jury that the jury should consider whether Lopez failed to retreat in determining whether he reasonably believed that the use of deadly force was necessary under Section 9.32(d). *See* TEX. PENAL CODE § 9.32(d).

Assuming without deciding that the jury charge was erroneous, Lopez still would not prevail. Lopez did not object to the alleged charge error. He thus must establish that he was egregiously harmed by the allegedly erroneous instruction. He has not done so.

Errors which result in egregious harm are those that affected "the very basis of the case, deprive[d] the defendant of a valuable right, vitally affect[ed] the defensive theory, or ma[de] a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *Cosio v.*

---

[3] On appeal, Lopez states that he went to Balogun's apartment either to buy marijuana, to rob him, or as a 17-year-old minor in possession of a firearm, any of which would be "engaging in criminal activity." TEX. PENAL CODE § 9.31(c). His trial theory was that he went to Balogun's apartment to buy marijuana then defended himself by shooting Balogun after Balogun attacked him.

*State*, 356 S.W.3d 766, 777 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171); *see* TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows that error was calculated to injure defendant's rights, or unless record shows defendant did not have fair and impartial trial). When assessing whether the appellant suffered egregious harm based on charge error, courts consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the record of the trial. *Vasquez v. State*, 389 S.W.3d 361, 368–69 (Tex. Crim. App. 2012) (citing *Almanza*, 686 S.W.2d at 171).

### 1.    Entirety of the charge

The 16-page charge instructed the jury of the circumstances under which it should find Lopez guilty of capital murder or the lesser-included offense of murder. The charge instructed the jury to acquit Lopez if it found he murdered Balogun in self-defense. The charge defined capital murder, including the predicate felony of robbery, informed the jury of the law of parties and its application to the case, defined and applied the lesser-included offense of murder, and defined relevant terms for each offense. The jury charge instructed the jury on Lopez's self-defense claim and instructed them that if the jury found, or had a reasonable doubt regarding whether, Lopez acted in self-defense, the jury should acquit him.

The State points out that Lopez did not suffer egregious harm because the charge instructed the jury not to consider Lopez's failure to retreat. The State alleges that this was an improper commentary on the evidence, but one that benefitted Lopez and increased the State's burden to overcome Lopez's self-defense claim.

We agree with the State that the instruction not to consider Lopez's failure to retreat benefitted Lopez. This instruction impliedly decided for the jury that Lopez met the conditions of Section 9.32(c). In other words, the instruction implied that Lopez had a right to be present in Balogun's apartment, he did not provoke Balogun, he did not engage in criminal activity, and he thus had no duty to retreat. *See* TEX. PENAL CODE § 9.32(c). The court's charge left available to the jury all evidence that advanced Lopez's self-defense claim, while instructing the jury not to consider whether he failed to retreat. Removing the ability for the jury to find that Lopez had a duty to retreat made it more difficult for the State to argue against Lopez's self-defense claim. That Lopez benefitted from the very error he complains about weighs heavily against a finding of egregious harm.

**2.    The evidence**

The State's theory was that Lopez and another man went to Balogun's apartment to rob him. During that robbery, Lopez shot and killed Balogun. Lopez maintained throughout trial that he acted in self-defense after Balogun attacked him.

Witnesses' testimony and video evidence from the scene of the crime support Lopez's culpability for Balogun's killing. Jose Vazquez, a friend of Lopez's brother who knew both Balogun and Lopez, testified that Lopez said he shot Balogun in Balogun's apartment after a "drug deal gone wrong." Vazquez knew Balogun sold marijuana. Vazquez testified that Lopez and a man known as "Foot" were at Balogun's apartment. Foot tied up Balogun with a TV cord, but Balogun freed himself. Per Vazquez, Lopez said that Balogun then pulled a gun on Lopez, and Lopez was shot in the finger while taking the gun from Balogun. Lopez then saw Balogun reached for a firearm underneath a pillow. According to Vazquez, although Lopez was pointing a gun at Balogun and said, "Don't do it!" Balogun persisted in reaching for the gun. Lopez shot Balogun twice. Lopez told Vazquez he shot Balogun in self-defense. When Vazquez spoke with Lopez, Lopez's hand was wrapped in gauze. Vazquez subsequently spoke to the homicide detective on the case, informing him of the information Lopez shared.

The homicide detective testified that one of Balogun's neighbors identified Lopez as someone she saw outside Balogun's apartment shortly before the murder. With this information and the information from Vazquez, the detective obtained an arrest warrant for Lopez. Lopez was arrested two weeks after the murder and agreed to be interviewed. Lopez first denied involvement, claiming his ankle monitor would

establish his alibi.[4] Then, the detective informed Lopez that video footage showed him at the apartment complex at the time of the shooting. Lopez asked for a break to smoke a cigarette. After the smoke break, Lopez admitted to the detective that he had killed Balogun but claimed he acted in self-defense.

The evidence further linked Lopez to the murder through the testimony of his older brother, Julius Lopez. Julius testified under an immunity agreement with the federal government. Julius testified that he drove Lopez, Foot, and a third person to Balogun's apartment complex.[5] According to Julius, the men had weapons that day, including Lopez who had a gun. Julius parked in back while Lopez and Foot went to "scope something out," which meant "do some research" or "surveillance" of "where somebody stays how many people stay there, that type of stuff."

Julius testified that Foot and Lopez did not plan to interact with Balogun. When Balogun eventually walked outside the apartment, Foot pushed Balogun back inside it. After two hours waiting in the car at the complex, Julius saw Foot "carrying guns and drugs" back to the car while wearing a backpack and carrying a blanket (which concealed the guns).[6] Foot put the stolen items in the back of Julius's car.

---

[4]   Vazquez testified that Lopez put his ankle monitor on his younger brother during the incident.

[5]   Julius Lopez testified that Foot and the third person were his codefendants in his federal conviction for aiding and abetting kidnapping and that both had been sentenced to federal prison.

[6]   Foot was not wearing the backpack when he initially got out of the car.

11

Next, Julius and Foot heard gunfire coming from the apartment complex. Julius testified that Foot ran back toward the apartment. Thirty to forty-five seconds later, Lopez and Foot returned to the car. Julius testified that everyone was panicked and that Lopez showed him that he had been shot in the finger.

The group returned to a third person's house, where Lopez told Julius that Foot had tied up Balogun, but Balogun untied himself, "pulled out a gun and he shot [Lopez]," and Lopez "claimed to be defending himself and he shot back and he took off running." However, Julius also testified that at the time, Lopez was unsure if he accidentally shot himself in the hand or if Balogun shot his hand. Julius testified that he did not think his brother went to Balogun's apartment to commit robbery. Eventually, Julius took Lopez to the hospital for treatment. Medical records showed Lopez lied about the reason for his hand injury, claiming that he fell off a dirt bike.[7]

---

[7]    Julius also testified that he found out after he was incarcerated that the mother of his children, Elizabeth Aviles, and Lopez had a relationship. Aviles testified in Lopez's trial before Julius did. When questioned by the State, Julius said that he had talked by phone to Aviles after she testified but that their conversation related only to their children. On cross-examination, Lopez's counsel questioned Julius's credibility by asking him about his communications with Aviles. Julius admitted that the conversations with Aviles were about the trial, not their children. Aviles had been trying to control Julius's testimony in her hope that Julius would be released from prison for testifying against his brother. The court later struck all of Aviles's testimony and instructed the jury not to consider it. Julius also testified on cross-examination that he told the detective that he was very high when he drove his brother to Balogun's apartment complex.

Balogun's mother testified that when she returned to her apartment, it was in disarray. She testified that her son owned multiple firearms and sold marijuana, and investigators found evidence corroborating that in Balogun's bedroom. The only firearm at the scene was found near Balogun's body.

Surveillance footage from the apartment complex shows Foot sneaking behind a dumpster wearing a backpack and holding something wrapped in a blanket and walking to an area where Julius says he was parked. After a gap in the video,[8] footage then shows Foot (without a backpack) and Lopez running from the apartments to Julius's car.

The jury heard testimony establishing that Lopez shot Balogun, a known marijuana dealer. The jury heard testimony from Julius and Vazquez that Lopez admitted Foot tied up Balogun before Balogun freed himself and Lopez claimed to have shot Balogun in self-defense. This testimony, in conjunction with the surveillance video, supports that Lopez stayed in the apartment with Balogun while Foot brought the stolen items to Julius's car, and that the shooting occurred shortly after Foot placed the items in the car. While the jury ultimately rejected the State's theory that Lopez intended to commit robbery at the time of the murder, the jury could weigh the testimony of the witnesses in determining whether Lopez used deadly force in self-defense—whether he reasonably believed deadly force was

---

[8]     There were gaps in the video recording because the camera was motion-activated.

13

immediately necessary to protect himself against Balogun's use or attempted use of unlawful force.[9] In considering whether Lopez used deadly force in self-defense, the jury was instructed "not to consider whether [Lopez] failed to retreat," an instruction that benefitted Lopez as the jury weighed the testimony and credibility of each witness. The evidence at trial thus weighs against a finding of egregious harm.

### 3. Arguments of counsel

In closing arguments, neither the State nor Lopez's counsel referred to the failure-to-retreat instruction in the charge. The State's closing argument implored the jury to find Lopez guilty of capital murder, focusing on the evidence supporting that Lopez intended to or was committing robbery at the time he shot Balogun. The State argued that while Balogun was trying to use deadly force against Lopez, it was not unlawful deadly force because Balogun was in his home and had a gun pointed at him to coerce a robbery; therefore, Lopez could not have reasonably believed that it was immediately necessary to shoot Balogun. *See* TEX. PENAL CODE §§ 9.31 (authorizing force against an individual using unlawful deadly force against an actor), 9.32 (authorizing deadly force if the individual believes it is immediately necessary to prevent another's use of unlawful deadly force). The State—arguing

---

[9]      Like a culpable mental state, a person's belief, absent direct evidence, generally must be inferred from the circumstances of the case. *Lozano v. State*, 636 S.W.3d 25, 33 (Tex. Crim. App. 2021). Evidence of self-defense need not come from the defendant. *Id.* It can be raised by other witnesses' testimony about the defendant's acts and words at the time of the offense. *Id.*

for a capital-murder conviction—posited that the evidence either showed that Lopez committed capital murder or that Lopez killed Balogun in self-defense. But the State also acknowledged that the jury could find Lopez guilty of the lesser offense of murder based on Julius's testimony that he did not think Lopez intended to commit robbery when he went to Balogun's apartment.

Lopez's counsel's closing argument argued that the investigation had been a myopic rush to judgment. Counsel pointed out alleged inconsistencies, unanswered questions, and the absence of evidence. Counsel argued that the evidence supported Lopez's self-defense theory. This factor weighs against a finding of egregious harm because the erroneous jury instruction was not mentioned by either counsel.

### 4. Other relevant information in the record

To the extent that Lopez argues that the jury's questions during its deliberation proves that the jury misapplied or misunderstood the law, the record does not rebut the presumption that the jury followed the court's charge. *Wappler v. State*, 183 S.W.3d 765, 780 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (stating appellate courts presume jury follows trial court's instructions unless that presumption is rebutted by evidence showing jury did not do so). We likewise disagree that the speed with which the jury reached its verdict after receiving the answer to its last inquiry proves that the jury misconstrued or failed to apply the law correctly.

15

Nothing in the jury's communications or its timing of reaching a verdict indicates that Lopez was deprived of a valuable right.[10]

This factor weighs against a finding of egregious harm.

### 5. Conclusion

The record does not establish that the purportedly erroneous failure-to-retreat instruction affected the very basis of the case, deprived Lopez of a valuable right, vitally affected a defensive theory, or made a case for conviction clearly and significantly more persuasive. *Taylor*, 332 S.W.3d at 490. On the contrary, the erroneous directive not to consider Lopez's failure to retreat benefitted Lopez's self-defense claim, making it harder for the State to argue Lopez was not acting in self-defense. The record does not show that Lopez suffered egregious harm requiring reversal of his conviction.

We overrule Lopez's issue related to the inclusion of the failure-to-retreat instruction in the jury charge.

## Jury Questions

Lopez argues that even if the jury charge correctly included the failure-to-retreat instruction, the trial court "still reversibly erred because it should have

---

[10]    The jury deliberated from sometime before 1:09 p.m. on June 14, 2023, until sometime before 1:34 p.m. on June 15, 2023. During that time, the jury sent the notes described in the following section as well as notes asking for scene and autopsy exhibits, asking whether "knowingly" applies to the lesser charge of murder or only to capital murder, and asking about duress and the law of parties.

responded substantively [to the jury's questions during deliberations] to correct the jury's clear misapprehension of the law in order to fulfill the court's obligation to clearly guide the jury with respect to the law." App. Br. at 8.

Lopez complains of the court's answers to the following questions from the jury:

- "Under the definition of self-defense, does 'engaged in criminal activity' refer to any criminal activity or is it specific to the alleged robbery?"

- "Is participation in a drug deal considered criminal activity?"

- "Are we only to consider criminal activity listed in the charge?"

After each question, the court instructed the jury to refer to the jury charge.

"Although the trial court ordinarily provides instructions to the jury in their entirety before the jury retires to deliberate, the court may give further written instructions upon the jury's written request for additional guidance regarding applicable law." *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. art. 36.16. (providing court may give "further charge" to jury upon jury's request after closing arguments); *id.* art. 36.27 (providing that court "shall answer any [jury] communication in writing"). A trial court's substantive response to a jury question "essentially amounts to a supplemental jury instruction" and is therefore governed by the "same rules" that "generally govern jury instructions." *Lucio*, 353 S.W.3d at 875.

17

"Because a trial court's answer to a jury's question must comply with the same rules that govern charges, the trial court, as a general rule, must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury." *Id.*; *see* TEX. CODE CRIM. PROC. art. 36.14. "If the request from a jury for additional instructions is not proper, the court should refer the jury to the court's charge." *Ash v. State*, 930 S.W.2d 192, 196 (Tex. App.—Dallas 1996, no pet.) (citing *Gamblin v. State*, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972)). A communication from the court that merely refers the jury to the original charge is not an additional instruction. *See Earnhart v. State*, 582 S.W.2d 444, 450 (Tex. Crim. App. [Panel Op.] 1979).

According to Lopez, the jury's questions show that the jury "was unable to properly consider Lopez's self-defense claim, though sufficient evidence was raised for the jury to have considered it." App. Br. at 18–19. He further asserts that because "engaged in criminal activity" was not defined in the charge, the court was obligated to respond to the jury's questions on that point with substantive answers.

The jury's questions asked for clarification regarding "engaged in criminal activity" under section 9.32(c). The Penal Code does not define this phrase; therefore, the jury's question asked the trial court for a non-statutory instruction. Non-statutory instructions are generally impermissible when they are unnecessary

18

to clarify the law or when the answer would draw the jury's attention to a particular type of evidence. *Beltran De La Torre v. State*, 583 S.W.3d 613, 618 (Tex. Crim. App. 2019).

We thus consider whether the requested answer (1) was unnecessary to clarify the law and (2) would have drawn the jury's attention to a particular type of evidence. *Harris v. State*, 668 S.W.3d 83, 94 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). After reviewing the charge and the record, we hold that the trial court did not err in referring the jury to the charge in response to the jury's inquiry. There is not a specific, statutory definition of "criminal activity." The jury's questions show that the jury was evaluating, the charge, including the factors under 9.32(c) where Lopez would not be required to retreat. Regardless of the jury's conclusion as to those factors, the next sentence of the charge instructed the jury not to consider Lopez's failure to retreat, an instruction that benefitted Lopez.

Had the court further defined "engaged in criminal activity," the court would have drawn the jury's attention away from the evidence it should consider in deciding whether Lopez was guilty of capital murder, murder, or whether he should be acquitted because he acted in self-defense. An answer to the jury's question could have impacted how the jury weighed the evidence of the reasonableness of Lopez's belief in his need to use deadly force, and therefore, skewed how the jury weighed his self-defense claim.

19

As to Lopez's argument that the questions demonstrate that the jury misapplied or misunderstood the law, we generally presume the jury follows the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). The presumption is rebuttable, but Lopez has pointed to no evidence in rebuttal. *See id.* The jury notes show that the jurors at times considered the first sentence of the instruction, reproducing Section 9.32(c). If the jury resolved whether Lopez fell within Section 9.32(c)'s parameters requiring retreat before deadly force, the next sentence of the jury charge forbade them from considering Lopez's failure to retreat. This instruction made it easier for Lopez to prove self-defense. "Even if the note[s] constitute[] evidence the jury discussed [Section 9.32(c)'s elements] *at a preliminary point,* we presume they followed the court's instructions and thereafter did not consider it in reaching their verdict." *Colburn*, 966 S.W.2d at 520 (emphasis in original); *Harris*, 668 S.W.3d at 94–96 (concluding jury's question regarding self-defense instruction did not rebut presumption that jury followed the jury charge). We have explained that even assuming the jury charge contained errors, Lopez did not suffer egregious harm.

We overrule Lopez's issue related to the court's responses to the jury's questions during deliberation.

## Conclusion

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish.  TEX. R. APP. P. 47.2(b).